# EXHIBIT

# "C"

DELTA
Career Institute
Accredited Member of ACICS

February 10, 1999

Bannum, Inc.
1301 Seminole Boulevard, Suite 126
Largo, FL 33770

Re: Rent on 1310 Pennsylvania, Beaumont, TX

Dear Sir:

Effective immediately, please forward all future rental payments directly to the owner of the building which is occupied by one of your departments as follows:

John F. McCray
P. O. Box 1528
Alexandria, LA 71309

Please note, however, that utility reimbursement payments need to continue to be forwarded to the San Diego address currently in your database.

Should you have any questions, please do not hesitate to call.

Very truly yours,

Michelle Webb
Vice President

mw

cc: Charles Elliott

1310 Pennsylvania, Beaumont, Texas 77701 • (409) 833-6161 (409) 83DELTA (409) 833-5251 FAX

• Where Graduates and Positions Meet •

# EXHIBIT

# "D"

Foxworth Real Estate Corporation

Friday, December 08, 2000

Mr. David Lowry
Bannum, Incorporated
1301 Seminole Blvd., Suite 126
Largo, FL 33770

Re: Bannum Place of Beaumont
1310 Pennsylvania Ave.
Beaumont, TX. 77701

Dear Mr. Lowry:

The owner has elected to execute his option to terminate your tenancy. Please consider this your 30-day notice.

Sincerely,

Foxworth Real Estate Corporation

Lee Y. Wheeler III, CCIM
Property Manager

2590 North Eleventh Street
P.O. Box 7338
Beaumont, Texas 77726-7338
409 892-7246
Fax 409 898-4108
http://www.foxworthrealty.com

# EXHIBIT

# "E"

CAUSE NO. ______________

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| KEN WEBB AND JOHN McCREY | § | |
| CHARLES FOXWORTH | § | ____ JUDICIAL DISTRICT |

STATE OF FLORIDA §

COUNTY OF PINELLAS §

**AFFIDAVIT OF DAVID A. LOWRY**

BEFORE ME, the undersigned authority, on this day personally appeared **DAVID A. LOWRY**, who on his oath did depose and say the following:

1. "I am over eighteen (18) years of age, is capable of making this affidavit, and have personal knowledge of the facts contained herein.

2. I am the President of Bannum, Incorporated ("Bannum"). Bannum is licensed to conduct business in the State of Texas.

3. Bannum currently has a legally binding agreement to lease and occupy the property located at 1310 Pennsylvania Avenue, Beaumont, Texas ("the leased premises).

4. The sole purpose for this lease and for Bannum entering into the agreement was to allow Bannum to operate and perform its contract with the United States Department of Justice, Bureau of Prisons, to provide a Community Corrections Center on the leased premises.

5. For that reason, the term of Bannum's agreement to lease the premises runs concurrently with Bannum's contract with the Bureau of Prisons.

6. If for some reason, Bannum is unable to provide a suitable property for the operation of the Community Corrections Center, the Bureau of Prisons is subject to cancel its contract with Bannum.

7. On December 15, 2000, Bannum received a letter from agents or representatives of the owner which stated that Bannum would be evicted from the premises within thirty days from that date.

8. On December 18, 2000, I discussed the aforesaid letter with Mr. Charles Foxworth, whom I have always known to be the agent of the owner of the leased premises.

9. Thereafter, on that same day, I drafted and delivered via facsimile and overnight courier a letter to Mr. Foxworth demanding that the owner of the leased premises retract its threat of eviction.

10. On December 19, 2000, I received a telephone call from Ms. Gina Mustain, a Bureau of Prisons Community Corrections Regional Administrator for the South Central Region of the United States. In that conversation, she inquired about the purported eviction and informed me that she was in possession of a copy of the eviction letter.

11. To my knowledge as President of the corporation, neither I, nor anyone else within the Bannum organization had theretofore given any Bureau of Prisons Official or employee any notice of the eviction letter.

12. On December 19, 2000, I again telephoned Charles Foxworth. He denied any involvement in providing the eviction letter to the Bureau of Prisons. Further, he refused to withdraw the eviction letter, stating that John McCrey instructed him to take no further action in regard to withdrawing the threat of eviction.

13. On December 20, 2000, I had a telephone conversation with Ms. Andrea Johnson who is Deputy Community Corrections Regional Administrator for the U. S. Department of Justice, Bureau of Prisons, in Dallas, Texas. Her office is responsible for contract oversight of Bannum's Beaumont program.

14. Ms. Johnson stated that since Bannum was being evicted from the contract location, a "Cure Notice" would be issued next week by the Contracting Office in Washington, D.C.

15. I then telephoned Ms. Bonnie Sinsel, Chief Contracting Officer for the U. S. Department of Justice, Bureau of Prisons in Washington, D.C. Ms. Sinsel confirmed that a "Cure Notice" would be issued by her office next week by the Contracting Office in Washington, D.C.

16. A "Cure Notice" is issued when the government believes that a contractor cannot continue to perform some or all of the terms of the contract. A "Cure

Notice" provides the contractor ten days in which to cure the problem. If the contractor does not cure the problem within the ten day period, then the government will terminate the contract for default.

17. I anticipate receiving a notice to cure from the United States Department of Justice, Bureau of Prisons before year end.

18. The only satisfactory cure, to our knowledge, would be injunctive relief from this court pending a trial on the merits."

FURTHER, AFFIANT SAYETH NAUGHT.

DAVID A. LOWRY

SWORN TO AND SUBSCRIBED before me on this the 21st day of December, 2000, to certify which witness my hand and seal of office.

Sandra Allen
My Commission CC883838
Expires July 11, 2003

NOTARY PUBLIC, STATE OF FLORIDA

CAUSE NO. ____________________

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| KEN WEBB AND JOHN McCREY CHARLES FOXWORTH | § | ____ JUDICIAL DISTRICT |
| STATE OF TEXAS | § | |
| COUNTY OF JEFFERSON | § | |

Whereas, the above-referenced cause, pending in the District Court of Jefferson County, Texas, styled *Bannum, Inc. vs. Ken Webb, John McCrey and Charles Foxworth*, the Honorable ______________________ did on the _____ day of ______________, 200_, sign an order granting a temporary injunction against KEN WEBB, JOHN McCREY and CHARLES FOXWORTH, jointly and severally, and requiring BANNUM, INC., Plaintiff, to make, execute, and file an injunction bond in the sum of $______________, payable to the adverse party for issuance of the writ of injunction; therefore:

Know all men by these presents, that we, the undersigned David Lowry, as principal, and Susan J. Oliver and Jocelyn Leiferman, as sureties, acknowledge ourselves bound to pay to KEN WEBB, JOHN McCREY and CHARLES FOXWORTH, jointly and severally, the amount of _______________ Dollars ($________.00), conditioned that BANNUM, INC. will abide by any decision that may be made in the aforesaid cause, and he will pay all sums of money and sums that may be adjudged against him if the temporary injunction issued on ______________________, in the aforesaid cause, enjoining KEN WEBB, JOHN McCREY and CHARLES FOXWORTH shall be dissolved in whole or in part.

WITNESS our hands _____________, 200_.

Applicant

David Lowry, President of BANNUM, INC.

Surety

Surety

Approved: _____________, 200_.

Clerk

Court of _______________________

Jefferson County, Texas

______ Judicial District

By: ________________________
Deputy

CAUSE NO. ____________

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| KEN WEBB AND JOHN McCREY CHARLES FOXWORTH | § | |
| | § | ____ JUDICIAL DISTRICT |

# TEMPORARY RESTRAINING ORDER

Plaintiff, BANNUM, INC., has filed a Motion for Temporary Restraining Order, together with Plaintiff's Original Petition, and an affidavit supporting the motion presented. It clearly appears from these papers that Plaintiff is probably entitled to a Temporary Injunction; that unless KEN WEBB, JOHN McCREY and CHARLES FOXWORTH, their agents, servants and/or employees be and hereby are commanded forthwith to desist and refrain from the process of evicting BANNUM, INC. from the facility located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, the Defendants will commit said acts before notice of the hearing on the Motion for Temporary Injunction can be served and a hearing had; that if the commission of said acts not be immediately restrained, Plaintiff will suffer irreparable injury, to-wit: Plaintiff will likely lose its contract with the United States Department of Justice, Bureau of Prisons, RFP2000-0366-SC, and that its reputation with the Small Business Administration will be damaged. Because of the immediate need for this Temporary Restraining Order, there is not enough time to serve notice on the Defendants and hold a hearing.

IT IS, THEREFORE, ORDERED that KEN WEBB, JOHN McCREY, and CHARLES FOXWORTH, their agents, servants, insurers and/or employees, be, and hereby are, commanded forthwith to desist and refrain from proceeding with an eviction of BANNUM, INC. from the

premises located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, until the fourteenth day after entry or until further Order of this Court.

IT IS, FURTHER ORDERED that the Motion of the Plaintiff for Temporary Injunction be heard before the Honorable ________________________, Judge of the ________ Judicial Court, on ________________________, 2000, at __________ o'clock, _____.m. in the _______ District Court of Jefferson County, Texas, located in the Jefferson County courthouse in Beaumont, Texas.

The clerk of the above and entitled Court shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to law, issue a Temporary Restraining Order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until Plaintiff, or his attorney, executes and files with the clerk a surety bond, in conformity with the law, in the amount of $__________________________.

SIGNED this ____ day of __________________, 200_, at _______ o'clock ____.m.

______________________________
JUDGE PRESIDING

CAUSE NO. D164349

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| KEN WEBB AND JOHN McCREY | § | |
| CHARLES FOXWORTH | § | _____ JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

Plaintiff, BANNUM, INC., has filed a Motion for Temporary Restraining Order, together with Plaintiff's Original Petition, and an affidavit supporting the motion presented. It clearly appears from these papers that Plaintiff is probably entitled to a Temporary Injunction; that unless KEN WEBB, JOHN McCREY and CHARLES FOXWORTH, their agents, servants and/or employees be and hereby are commanded forthwith to desist and refrain from the process of evicting BANNUM, INC. from the facility located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, the Defendants will commit said acts before notice of the hearing on the Motion for Temporary Injunction can be served and a hearing had; that if the commission of said acts not be immediately restrained, Plaintiff will suffer irreparable injury, to-wit: Plaintiff will likely lose its contract with the United States Department of Justice, Bureau of Prisons, RFP2000-0366-SC, and that its reputation with the Small Business Administration will be damaged. Because of the immediate need for this Temporary Restraining Order, there is not enough time to serve notice on the Defendants and hold a hearing.

IT IS, THEREFORE, ORDERED that KEN WEBB, JOHN McCREY, and CHARLES FOXWORTH, their agents, servants, insurers and/or employees, be, and hereby are, commanded forthwith to desist and refrain from proceeding with an eviction of BANNUM, INC. from the

premises located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, until the fourteenth day after entry or until further Order of this Court.

IT IS, FURTHER ORDERED that the Motion of the Plaintiff for Temporary Injunction be heard before the Honorable SHUFFIELD, Judge of the 136th Judicial Court, on JANUARY 2, 2001, at 1:30 o'clock, p. m. in the 136th District Court of Jefferson County, Texas, located in the Jefferson County courthouse in Beaumont, Texas.

The clerk of the above and entitled Court shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to law, issue a Temporary Restraining Order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until Plaintiff, or his attorney, executes and files with the clerk a surety bond, in conformity with the law, in the amount of $ 1000.00.

SIGNED this 22nd day of December, 2000, at 1:15 o'clock p .m.

JUDGE PRESIDING

FILED
at 1:15 o'clock p. M.
DEC 22 2000
JOHN S. APPLEMAN
CLERK DISTRICT COURT JEFFERSON CO. TEXAS
BY DEPUTY

I CERTIFY THIS AS A TRUE COPY,
Witness my Hand and Seal of Office
DEC 22 2000
JOHN S. APPLEMAN, DISTRICT CLERK
JEFFERSON COUNTY, TEXAS
BY Deputy

CAUSE NO. D-164,349

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| VS. | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| KEN WEBB AND JOHN McCREY CHARLES FOXWORTH | § | |
| | § | 136TH JUDICIAL DISTRICT |

## ORDER EXTENDING TEMPORARY RESTRAINING ORDER

The first Temporary Restraining Order in this cause was issued on December 22, 2000 at 1:15 p.m.

Plaintiff, BANNUM, INC., has filed a Motion for Temporary Restraining Order, together with Plaintiff's Original Petition, and an affidavit supporting the motion presented. It clearly appears from these papers that Plaintiff is probably entitled to a Temporary Injunction; that unless KEN WEBB, JOHN McCREY and CHARLES FOXWORTH, their agents, servants and/or employees be and hereby are commanded forthwith to desist and refrain from the process of evicting BANNUM, INC. from the facility located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, the Defendants will commit said acts before notice of the hearing on the Motion for Temporary Injunction can be served and a hearing had; that if the commission of said acts not be immediately restrained, Plaintiff will suffer irreparable injury, to-wit: Plaintiff will likely lose its contract with the United States Department of Justice, Bureau of Prisons, RFP2000-0366-SC, and that its reputation with the Small Business Administration will be damaged. Because of the immediate need for this Temporary Restraining Order, there is not enough time to serve notice on the Defendants and hold a hearing.

This Court finds good cause to extend the original Temporary Restraining Order by a maximum of 14 days. The Court finds that the Plaintiff has been unable to serve all the Defendants with motion of the hearing for Temporary Injunction scheduled for January 2, 2001, because of the Christmas holidays, and further finds that the president of Bannum, Inc., David Lowry, is unable to testify at hearing scheduled for January 2, 2001.

IT IS, THEREFORE, ORDERED that KEN WEBB, JOHN McCREY, and CHARLES FOXWORTH, their agents, servants, insurers and/or employees, be, and hereby are, commanded forthwith to desist and refrain from proceeding with an eviction of BANNUM, INC. from the premises located at 1310 Pennsylvania, Beaumont, Jefferson County, Texas, until the fourteenth day after entry or until further Order of this Court.

IT IS, FURTHER ORDERED that the Motion of the Plaintiff for Temporary Injunction be heard before the Honorable Milton Shuffield, Judge of the 136th Judicial Court, on January 11, 2000, at 8:30 o'clock, A .m. in the 136th District Court of Jefferson County, Texas, located in the Jefferson County courthouse in Beaumont, Texas.

The clerk of the above and entitled Court shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to law, issue a Temporary Restraining Order in conformity with the law and the terms of this Order.

A surety bond in the amount of $1,000.00 is on file herein.

SIGNED this 2nd day of January, 2001, at 12:30 o'clock P .m.

FILED at 12:30 o'clock P M.
JAN 02 2001
JOHN B. APPLEMAN
CLERK DISTRICT COURT OF JEFFERSON CO, TEXAS
BY [signature] DEPUTY

[signature]
JUDGE PRESIDING

I CERTIFY THIS AS A TRUE COPY
Witness my Hand and Seal of Office
JAN 02 2001
JOHN B. APPLEMAN, DISTRICT CLERK
JEFFERSON COUNTY, TEXAS
BY [signature] DEPUTY

| | | |
|---|---|---|
| Bannun, Inc. | | |
| Contract No. J200C-336 | | |
| Claim for Equitable Ajustment | | |
| Summary of Pricing Bannum's REA | | |
| | | |
| | | |
| Area of Costs | Calculated Rate | Dollar Amount |
| | | |
| Added Administrative Time and effort in dealing with the Show Cause and its response | | $4,000.00 |
| | | |
| Added Clerical, copying, etc cost | | $500.00 |
| | | |
| Subtotal of Bannun's Claim due to the Show Cause | | $4,500.00 |
| | | |
| The Above Amounts include all Burden, G&A and Profit | | |

U.S. Departm· ¬t of Justicc

Federal Bureau of Prisons

*Washington, DC 20534*

January 9, 2001

Mr. David Lowry, Executive Director
Bannum, Incorporated
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770

RE: Contract J200c-336
Beaumont, Texas area

Dear Mr. Lowry:

In your letter of January 3, you stated that Bannum filed a Petition for Temporary Restraining Order, Injunction and Declaratory Judgment (TRO) in the District Court in Jefferson County, Texas.

Your letter also stated that a hearing on the matter was scheduled for January 3, however, the TRO was extended until January 11, at which time a hearing will be held on the matter.

Bannum is required to provide in writing, the outcome of the hearing to the Contracting Officer by fax at (202)307-2780 and mail the original to the Federal Bureau of Prisons, Acquisitions Branch, Attn: CCC Contracting, 320 First Street, N.W. (5006), Washington, D.C. 20534, no later than January 11, 2001, 2:00 p.m. local time.

If you have any questions, please let me know.

Sincerely,

Katharina Washington
Katharina Washington
Contracting Officer

January 11, 2001

*Via Facsimile*
Ms. Katharina Washington
Contracting Officer
U. S. Department of Justice
Federal Bureau of Prisons
320 First Street N.W.
Washington, DC

Re: Contract J200c-336
Bannum Place of Beaumont

Dear Ms. Washington:

This letter is in response to your request of January 9, 2001 which requires a written response as to the outcome of the hearing which was held today. Attached is a copy of the "Injunction" entered by the Court this date and which enjoins termination of the lease.

Sincerely,

David Lowry

DL/jcl
Attachment

CAUSE NO. D-164,349

| | | |
|---|---|---|
| BANNUM, INC. | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | JEFFERSON COUNTY, TEXAS |
| | § | |
| KEN WEBB AND JOHN McCREY | § | |
| CHARLES FOXWORTH | § | 136TH JUDICIAL DISTRICT |

# INJUNCTION

The Petition of BANNUM, INC., Plaintiff in this cause, for a temporary injunction came on regularly for hearing this day, due notice having been given.

On considering the evidence received and the argument of counsel, the Court finds and concludes that one or more of the Defendants intends to attempt to evict BANNUM, INC. from the facilities at 1310 Pennsylvania Avenue, Beaumont, Texas, which is the property subject to the lease agreement.

This Court finds that, based upon the evidence presented, it appears that Plaintiff ~~will~~ may be successful at the trial on the merits of this cause. The Court finds that Defendants intend to evict Plaintiff from the premises at 1310 Pennsylvania Avenue, Beaumont, Texas and if Defendants carry out their intentions to terminate the lease agreement, it will thereby alter the status quo and tend to make ineffectual a judgment in favor of Plaintiff, in that it will effect Plaintiff's reputation in the business of providing community correction facilities. The Court further finds that if Defendants carry out these intentions to terminate the lease agreement that it will adversely affect BANNUM, INC.'s relationship with the Bureau of Prisons and the United States Department of Justice thereby affecting BANNUM, INC.'s business goodwill. The Court further finds that if Defendants carry out intentions to terminate the lease agreement with BANNUM, INC., these actions will adversely affect

the federal inmates housed by BANNUM, INC. in Beaumont, Texas, as well as other employees and vendors associated with the program..

IT IS FURTHER ORDERED that Defendants, KEN WEBB, JOHN McCREY and CHARLES FOXWORTH are commanded to not pursue an eviction process for BANNUM, INC. at 1310 Pennsylvania Avenue, Beaumont, Texas 77701 until judgment in this cause is rendered by this Court.

IT IS FURTHER ORDERED that trial on the merits of this cause is ordered set for MARCH 1, 2001.

This order shall not be effective unless and until BANNUM, INC. executes and files with the clerk a bond, in conformity with the law, in the amount of $10,000.00.

The Clerk shall forthwith, on the filing by BANNUM, INC. of the bond, and on approving the bond according to the law, issue temporary injunction in conformity with the law and the terms of this Order.

SIGNED this the 11th day of January, 2001.

JUDGE PRESIDING

I CERTIFY THIS AS A TRUE COPY
W... my Hand and Seal of Office

JAN 11 2001

S. APPLEMAN, DISTRICT CLERK
JEFFERSON COUNTY, TEXAS
BY: DEPUTY

**U.S. Departr 't of Justice**

Federal Bureau of Prisons

*Washington, DC 20534*

January 29, 2001

Mr. David Lowry, Executive Director
Bannum, Inc.
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770

Re: Claim for Equitable Adjustment for Contract Number J200c-336 (Beaumont, TX).
(Costs for responding to Cure Notice)

Dear Mr. Lowry:

This is in response to your claim for an equitable adjustment dated January 3, under Contract J200c-336, for services to be provided in the Beaumont, Texas area. The claim for equitable adjustment under Contract J200c-336 in the amount of $4,500 is in regard to the costs entailed in responding to the Cure Notice.

The Bureau of Prisons ("BOP") issued a Cure Notice based on documentation provided to the BOP. The BOP received a letter addressed to Bannum, Inc. from the owner of the building which stated that the owner had elected to execute their option to terminate Bannum's tenancy and for Bannum to consider the letter as its 30-day notice.

Based on the information received, the BOP did not have adequate assurances that Bannum would be able to perform the services as required by the contract and was in danger of defaulting on the contract. In accordance with Federal Acquisition Regulation 52.249-8 Default (Fixed-Price Supply and Service), the BOP is required to issue a Cure Notice prior to making a decision to terminate a contractor for default. The BOP considers the contractor's response to a Cure Notice as part of the basic contract administration requirements of the contract and is not entitled to any costs associated with preparing the response.

Based upon the above, your claim for an equitable adjustment under Contract J200c-336 in the amount of $4,500 is hereby denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the Department of Transportation Board of Contract Appeals (DOTBCA), Nassef Building, 400 Seventh Street, S.W., Washington, D.C., 20590. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the DOTBCA and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the DOTBCA, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the DOTBCA, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

If you have any questions, please let me know.

Sincerely,

Katharina Washington

Katharina Washington
Contracting Officer

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

February 20, 2001

Katharina Washington
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Contract #J200c-336
Beaumont, TX

Dear Ms. Washington:

Bannum's attorney appeared in court this date concerning our lease in Beaumont, TX (see attached letter). Our trial date of March 1, 2001 has been removed from the docket and a new date will be set sometime in the future. Please note that the injunction previously granted remains in place, therefore, Bannum continues to perform the services as required by contract and is not in danger of defaulting.

I will let you know when a new trial date is set, and if I can be of any further assistance, please let me know.

Sincerely,

David A. Lowry

cc: Andrea Johnson

FEB-20-2001 10:05AM 4098 P.


# SUSAN J. OLIVER

ATTORNEY AT LAW
505 MILAM, SUITE 600
BEAUMONT, TEXAS 77701-4400
TELEPHONE 409-835-4000
FACSIMILE 409-835-1140


February 20, 2001

***Via Facsimile 727-588-2689***
Mr. David Lowry
Executive Director
Bannum, Inc.
1301 Seminole Blvd., Suite 126
Largo, FL 33770

Re: No. D-164,349; *Bannum, Inc. v. Ken Webb, et al*; In the 136th District Court, Jefferson County, Texas

Dear Mr. Lowry:

On February 20, 2001, the Court heard our motion to continue the trial setting in this matter. The Court ruled that this case is removed from the March 1, 2001 trial docket to be reset at sometime in the future, presumably months away. In the meantime, the injunctive relief will remain in place, and the owners of the building at 1310 Pennsylvania Avenue, Beaumont, Texas are enjoined from instituting any type of eviction procedures.

Apparently, the Court understands our arguments as the agency relationship between the lessor and the owner of the property, and he is allowing us to pursue discovery on these issues.

Please let us know if we may provide you with any additional information at this time.

Sincerely,

Susan J. Oliver

SJO/jcl

**U.S. Depar nt of Justice**

Federal Bureau of Prisons

*Washington, DC 20534*

February 28, 2001

Mr. David Lowry, Executive Director
Bannum, Incorporated
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770

RE: Contract J200c-336
Beaumont, Texas area

Dear Mr. Lowry:

We have received your letter of February 20, regarding the Injunction filed in the District Court in Jefferson County, Texas.

A letter from Bannum's attorney, Susan Oliver, states that on February 20 the court ruled that this case is removed from the March 1, 2001 trial docket to be reset at sometime in the future.

Bannum is required to provide in writing, a response to the cure notice to the Contracting Officer by fax at (202)307-2780 and mail the original to the Federal Bureau of Prisons, Acquisitions Branch, Attn: CCC Contracting, 320 First Street, N.W. (5006), Washington, D.C. 20534, no later than one to two business days after a new court date is set.

If you have any questions, please let me know.

Sincerely,

Katharina Washington
Contracting Officer

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

March 7, 2001

Katharina Washington
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

Dear Ms. Washington:

This is in response to your letter of February 28, 2001 regarding Bannum Place of Beaumont.

As you are aware, Bannum previously provided a response to the Cure Notice, however, we will provide an additional response within one to two business days after the trial has concluded. Additionally, we will notify you of the new trial date as soon as a date is set.

Sincerely,

David A. Lowry

**U.S. Department of Justice**

Federal Bureau of Prisons

Community Corrections Office

*515 Rusk Avenue, Room 12024*
*Houston, Texas 77002*
*(713) 718-4781 Fax: (713) 718-4780*

DATE: March 29, 2001

TO: Kathrina Washington, Contracting Officer

THRU: Gina Lane Mustian, CCRA, SCR
Andrea Johnson, Asst. CCRA, SCR
Benjamin R. Tousley, CCM, Houston

FROM: Charles W. Ala, Contract Oversight Charles W. Ala /s/
Houston, Texas.

SUBJECT: Bannum Beaumont J200c-336

This memo concerns the continuing problems with Bannum Beaumont's lease of the building at 1310 Pennsylvania Avenue, Beaumont, Texas. I received a phone call from Mr. Lee Wheeler of Foxworth Real Estate, Beaumont, Texas. Mr. Wheeler represents John McCray, the owner of the building that houses our federal inmates. He informed me that the court date of March 12, 2001, was extended by the judge until March 30, 2001. David Lowry of Bannum Incorporated, requested and was granted another extension by the judge today. Mr. Wheeler did not have the date of the next scheduled court date.

Mr. Wheeler also informed me that the Richard Milburn Academy, a school for troubled youths, is now occupying the back portion of the building as of January 31, 2001. I phoned the school and spoke to Director Herbert Johns. Mr. Johns informed me that the youths are of high school age. Most of them are on some type of parole or probation and sent to them from Texas Youth Commission (TYC). They conduct two four-hour classes per day from 8:00 a.m. to 5:00 p.m. The morning class has 60 children and the afternoon class has 40 children.

I asked Mr. Johns if they had experienced any problems with the staff or the inmates at Bannum Beaumont. He stated that he had not talked to any of the employees, but his secretary had told an inmate this morning he was not allowed to fraternize with the students. The student he was

talking to was a female. Mr. Johns told me he was missing three of his male students on March 28, 2001. He went outside to look for them and found them in front of the Bannum facility. He also stated they smelled of smoke and were acting strange. I asked him if he gave the children a urinalysis and he stated that he could not give u/a's or even bring drug dogs into his facility.

Mr. Johns said he thought that Bannum Beaumont was to be moved out of the facility prior to them occupying the building. He has great concerns about adult federal inmates being housed in proximity to the school.

This is a potentially hazardous situation that could have serious ramifications, not to mention media attention, if a federal inmate gets involved with a student sexually or by using drugs and alcohol.

We are asking for your guidance concerning this situation.

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

May 14, 2001

Katharina Washington
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Bannum Place of Beaumont

Dear Ms. Washington:

A trial date of May 25, 2001 has been set for the matter relating to our lease in Beaumont, TX. As you are aware, an injunction imposed by the court remains in full force and effect.

As I have previously informed Ms. Andrea Johnson, Assistant CCRA of the South Central Region, even if Bannum were not to prevail at trial, we will be prepared to file an immediate appeal. Also, the property owner has not begun the legal eviction process; his agent has simply mailed a letter to vacate. If and when a legal eviction notice were to proceed, Bannum will challenge that process in court as well.

I will keep you informed of the status of this matter.

Sincerely,

David A. Lowry

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

May 25, 2001

Katharina Washington
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Contract J200c-336
Beaumont, TX

Dear Ms. Washington:

We previously advised you that a trial date of May 25, 2001was scheduled for the lease matter in Beaumont, TX. That trial date has been changed to June 1, 2001. As stated before, we will keep you informed of all progress in this matter.

Sincerely,

David A. Lowry

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

June 4, 2001

Katharina Washington
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Beaumont, TX

Dear Ms. Washington:

This letter provides an update to our lease situation in Beaumont, TX. As I explained to Ms. Bonnie Sinsel on Friday and Ms. Andrea Johnson today, Bannum withdrew its complaint in the District Court for Jefferson County, Texas and will file a new complaint in the United States District Court, Middle District of Florida, Tampa Division tomorrow naming the property owner as a defendant, along with several other co-defendants.

Although our Temporary Restraining Order is no longer in effect, the property owner has yet to begin the legal eviction process. I have been advised by Texas legal council that if the property owner does begin the eviction process in State Court that we will have ample time to defend that action, to include several stages of appeal.

I will keep you informed of our progress, and if I can be of any further assistance, please let me know.

Sincerely,

David A. Lowry

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

June 15, 2001

Bonnie Sinsel
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Contract #J200c-336
Beaumont, TX

Dear Ms. Sinsel:

This letter is written in response to our recent telephone discussion concerning the above referenced contract. In that discussion, you informed me that the BOP is considering not exercising the last option period.

As you are aware, the BOP issued what we believe to be an improper cure notice as a result of the property owner's unlawful attempt to evict Bannum from its contract site. Accordingly, Bannum filed an action in Texas State Court against the property owner and obtained a Temporary Restraining Order which allowed us to continue to operate the contract. Then, as a result of new information received during discovery, Bannum withdrew its State action and immediately filed an action against the property owner and others in Federal Court. That action is pending.

In addition, during the discovery process, the defendants produced certain documents which disclosed their contacts with CCCOS Ala. At this point, we are not sure of the relevance of that information but obviously, as the litigation progresses, its relevance will be established.

As you are aware, Bannum has, over the past six months, spent an appalling amount of time, money and energy in our effort to enforce our property rights and thereby preserve the integrity of the contract. To now be informed that our efforts may be for naught is unacceptable. We believe that we would be entitled to a claim for our costs as a result of our efforts to maintain the contract if the BOP does not exercise the last remaining option period. Also, we have numerous REAs and/or

claims pending which are associated with this contract, and termination of the contract will not mitigate those damages.

Therefore, we are requesting that the BOP allow Bannum to complete this contract in its entirety.

Sincerely,

David A. Lowry

FILED
NOV 20 2001 B28
Date Time
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED B28
01 OCT 11 PM 3:33

BANNUM, INC.,

Plaintiff,

v.

CASE NO. 8:01CV1099-T-27-MAP

JOHN McCRAY, DELTA CAREER INSTITUTE, DELTA CAREER MANAGEMENT COMPANY, INC., CHARLES FOXWORTH, FOXWORTH REAL ESTATE, JOHN DOE, JANE DOE, LEE WHEELER, RICHARD COMPTON, P.E. COMPTON, AND RICHARD MILBURN ACADEMY, CHUCK ALA, AGENT OF THE UNITED STATES GOVERNMENT ACTING THROUGH THE BUREAU OF PRISONS,

Defendants.

DECLARATORY AND INJUNCTIVE RELIEF REQUESTED

JURY TRIAL DEMANDED

______________________________/

**SECOND AMENDED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, by and through its undersigned attorney, hereby files this Complaint requesting declaratory and injunctive relief and states as follows:

**Parties**

1. Plaintiff is a Kentucky corporation with its principal place of business located in Pinellas County at 1301 Seminole Boulevard, Suite 126, Largo, Florida, 33770.

2. John McCray is a citizen of the state of Louisiana domiciled at 1030 Balboa Point, Boyce, Louisiana 71409.

3. Delta Career Institute, Inc. is a Texas corporation having a principal place of business located at 2825 Interstate 10 E, Beaumont, Texas 77702.



62 43

4. Delta Career Management Company, Inc. is a Louisiana corporation with a principal place of business located at 3900 Lee Street Ext., Alexandria, Louisiana 71302.

5. Foxworth Real Estate Corporation is a Texas corporation with its principal place of business located at P.O. Box 7333, Beaumont, Texas 77726.

6. Upon information and belief, Charles Foxworth is a citizen of the state of Texas domiciled in Beaumont, Texas.

7. Lee Wheeler is a citizen of the state of Texas domiciled at 7940 Buttercup Lane, Beaumont, Texas 77713.

8. Upon information and belief, Richard Compton is a citizen of the state of Texas.

9. Upon information and belief, P.E. Compton is a citizen of the state of Texas.

10. Richard Milburn Academy is a Virginia corporation doing business in Beaumont, Texas.

11. Upon information and belief, Chuck Ala is a citizen of the State of Texas, and federal agent working as a Community Corrections Contract Oversight Specialist ("CCCOS") for the United States Department of Justice, Federal Bureau of Prisons ("BOP").

12. "John Doe" and "Jane Doe" are individuals with responsibility for the matter set forth herein, but recently filed bankruptcy in California and are subject to an automatic stay pursuant to the Bankruptcy Code, 11 U.S.C. §362(a), they may neither be sued nor served at this time.

<u>Subject Matter Jurisdiction</u>

13. This action is before the Court on the basis of federal diversity jurisdiction. The matter in controversy exceeds, exclusive of interest and cost, the sum specified by 28 U.S.C. § 1332.

14. This action also arises under, and the Court has federal question jurisdiction pursuant to, the Organized Crime Control Act of 1970, 18 U.S.C. §1964 (a) and (c) (Racketeer Influenced and Corrupt Organizations ("RICO")); 28 U.S.C. §1331 (federal question); and under the principles of supplemental jurisdiction under 28 U.S.C. §1367.

Personal Jurisdiction

15. Bannum is corporation whose principal place of business in Largo, Florida. Bannum operates approximately twenty (20) community corrections centers, or "halfway houses," throughout the United States pursuant to contracts with the United States Department of Justice, Federal Bureau of Prisons ("BOP") located in Washington, D.C. Bannum has halfway houses located in several states throughout the country, including but not limited to Florida, North Carolina, South Carolina, West Virginia, Alabama, Mississippi, Georgia, Nevada, and Texas. Bannum administers all of its federal contracts with the BOP from its headquarters in Largo, Florida, the "nerve center" of Bannum's national operation. The operation of all of Bannum's halfway houses is overseen from its offices in Largo, Florida. Bannum does this primarily by the use of telephone and facsimile communication, as well as through the United States mail and private courier.

16. This facts and circumstances which form the basis of this action grew out of one of Bannum's contracts with the BOP for the operation of a halfway house in Beaumont, Texas. Specifically, Bannum entered into a lease agreement with an agent of Defendant John McCray for the rental of a building in Beaumont in which to operate its halfway house. The lease agreement was facilitated by Defendant McCray's real estate agent in Texas, Charles Foxworth, also a Defendant in this case. All of Bannum's negotiations for the lease agreement between Bannum's headquarters in Largo, Florida and the Defendants took place by interstate

negotiations by telephone, facsimile, United States mail, and private courier.

17. At the time the lease was entered into, the Defendants were fully aware that the facility was needed for the operation of a halfway house, pursuant to a contract between the BOP and Bannum. In fact, as stated therein, the parties agreed that Bannum's lease would run concurrently with Bannum's contract with the BOP, including all option periods. Furthermore, as explained more fully hereinbelow, the Defendants also completed and filed a zoning change application with the City of Beaumont so that the facility could be used as a halfway house pursuant to Bannum's contract with the BOP. As a direct result of said zoning application, the City of Beaumont issued a use permit to Bannum for use of the premises as a "halfway house" pursuant to its contract with the BOP.

18. Following award of the BOP contract to Bannum, Bannum made monthly rent payments to the Defendants, in Texas, Louisiana, and California, from its headquarters in Largo, Florida.

19. As Bannum alleges more fully hereinbelow, Bannum has been damaged by the fraud of Defendants, which took place by mail and facsimile over state lines with Bannum's headquarters in Largo, Florida. Furthermore, Bannum has been further damaged by Defendants' repudiation of the lease agreement and threatened eviction. As a direct result thereof, the BOP issued a "Cure Notice" to Bannum on December 26, 2000, wherein it directed Bannum that it was considering terminating its contract for default based on the aforementioned notice of eviction received from defendant Foxworth. As such, Defendants have put Bannum into a position where it is faced with a possible termination for default by the BOP if it is wrongfully evicted from its facility in Beaumont, Texas. If a termination for default occurs, Bannum's entire operation, which is headquartered in Florida, will suffer irreparable harm, including

damage to its business reputation and goodwill, as it will be effectively barred from any future Government contract awards.

20. As evidenced by the foregoing, this Court has personal jurisdiction over the Defendants by virtue of the fact that at the time they entered into the lease agreement for the property in Beaumont, Texas, they were fully aware that the lease was signed in furtherance of a federal Government contract between the BOP and Bannum, a business headquartered in the State of Florida. In so doing, the Defendants not only accepted the financial benefits of the lease agreement, but also availed themselves of the jurisdiction of the Florida Courts. The lease agreement was contingent upon the BOP's award of a contract to Bannum for the operation of a halfway house. If Bannum had not been awarded the BOP contract, then there never would have been a lease agreement for the facility in Texas. The lease agreement is the equivalent of a subcontract of Bannum for its Government contract with the BOP. As such, the Defendants had more than fair warning that any breach of the lease agreement, or fraud associated therewith, would subject them to the jurisdiction of the Florida Courts. The Defendants purposefully directed the lease of the facility in Beaumont, Texas to Bannum, a business headquartered in the State of Florida. The instant litigation and all of Bannum's injuries arise out of and relate directly to the wrongful actions of Defendants related to the lease agreement. The State of Florida has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors, especially those who purposefully derive benefit from their interstate activities, such as the Defendants in this case.

<u>Background</u>

21. In January, 1997, representatives of Bannum traveled to Beaumont to search for property for lease in connection with a competitive bid it intended to make for a United States

Department of Justice, Bureau of Prisons "Request for Proposal" for a Community Corrections Center in Beaumont, Texas.

22. Bannum engaged the services of a commercial real estate broker, Milt Prewitt of J.M. Prewitt Company in Beaumont, specializing in the types of property needed.

23. The aforementioned Mr. Prewitt contacted various other brokers in the area and directed Bannum's representative to several properties meeting the size and certain other requirements for the proposal. One of these brokers, defendant Charles Foxworth, assured Mr. Prewitt and Bannum's representatives that he was the property owners' agent for the property located at 1310 Pennsylvania, Beaumont, Texas, a twenty-five thousand (25,000) square foot facility wherein there was adequate space available for Bannum's intended use (hereinafter referred to as "the premises"). Bannum only needed to lease approximately six-thousand (6,000) square feet for purposes of the contract it was bidding with the BOP. Defendant Foxworth introduced Ken Webb as the owner of the premises to Milt Prewitt and to Bannum's representatives. Upon information and belief, Ken Webb had authority from the owner, defendant John McCray, to lease the entire premises or any portion thereof.

24. Defendant McCray had purchased the premises for operation of the Delta Career Institute on or about December, 1987, and purportedly sold Delta Career Institute to Ken and Michelle Webb in 1998. As part of the agreement between defendant McCray and Ken and Michelle Webb for operation of the Delta Career Institute, Ken and Michelle Webb were obligated to pay defendant McCray fifteen percent (15%) of the profits of the business. In addition to remaining a director of the corporations, defendant McCray also entered into a "Consulting Contract" with Ken and Michelle Webb on April 4, 1989 with respect to Delta Career Institute. Pursuant to the "Consulting Contract," John McCray was to obligated to

perform certain managerial duties with respect to Delta. Specifically, pursuant to the ¶1 of the Consulting Contract, John McCray was required to do the following:

> (a) Review and critique of budgetary data and other financial statements or reports of company;
>
> (b) Review and critique of all financial aid reports of Company;
>
> (c) Review and critique of admissions data and reports of Company;
>
> (d) Review and critique of instructional materials and aids;
>
> (e) Share and provide enrollment, registration and promotional materials developed by Consultant for its own use and facilitate adaptation for utilization by Company;
>
> (f) Provide information on and access to any volume or other discount purchasing rights not requiring common or related ownership to which Consultant may have access on behalf of its clients;
>
> (g) Access for on demand managerial assistance and advice;
>
> (h) Visit Company's campus not less than twice per year for purposes of making an inspection and evaluation of company operations; and
>
> (i) Provide access for observation and participation by a representative of Company in management meetings of Delta Career College, Inc.
>
> (j) Consultation and advice on expansion or modification projects.

The "Consulting Contract" also provided that "[i]n return for the services to be rendered by Consultant (McCray), Consultant shall receive from Company a sum equal to Fifteen (15%) percent of gross revenues (gross receipts less refunds) of Company." The term of the "Consulting Contract" was for a primary term of twenty (20) years, with an option to the

Consultant to extend the agreement for an additional period of ten (10) years. At or about the same time, defendant McCray also transferred title to other schools which he owned to Ken and Michelle Webb, while at the same time retaining fifty percent (50%) of the profits from, and a management interest in, each of the schools. As such, defendant McCray and Ken and Michelle Webb were partners or joint ventures in all of these businesses together.

25. Upon information and belief, the aforementioned "Consulting Contract" between John McCray and the Webbs was a scheme and/or conspiracy to defraud the Internal Revenue Service and evade the payment of taxes, since John McCray had no intention to actually perform the duties required in the Contract. In fact, in a September 24, 2001 filing in Texas District Court, John McCray's attorney admitted that "McCray had no involvement in the day to day operations of Delta Career Institute after the sale" (see "John McCray's and Charles Foxworth's Amended Motion for Summary Judgment and Response to Bannum's Motion for Summary Judgment," Cause No. D-164,349, District Court of Jefferson County, Texas, 136th Judicial District). Upon information and belief, by taking payment over time pursuant to a sham Consulting Contract, John McCray would not have been subject to a capital gains tax on the full payment lump sum he would have taken. Upon information and belief, if John McCray had taken full payment, and had he been subject to alternative minimum tax at that time, the tax consequences could have been severe. Further, upon information and belief, by taking the payments over time pursuant to a sham "Consulting Contract," John McCray might have deferred payment of taxes on the amounts into retirement years in which his income tax rate was substantially reduced. Upon information and belief, the Webbs, by entering into a sham Consulting Contract, might have evaded payment of taxes on the amounts needed from the company for buy-out of John McCray.

26. Thereafter, based in part on the representations and negotiations with defendant Foxworth and Ken Webb, Bannum selected the premises for use in bidding upon a private service contract with the United States Department of Justice, Bureau of Prisons to provide twenty-four (24) hour residential community correction center services and transitional drug treatment services to federal inmates re-entering the Beaumont general community.

27. As a requirement in submitting a bid on its Government contract, Bannum then negotiated a lease agreement through defendant Foxworth for use of the property should a contract be awarded to Bannum. Said negotiations were performed between Bannum in Florida and defendant Foxworth in Texas in person and by telephone, United States mail, overnight courier, and facsimile.

28. On or about February 5, 1997, an authorized representative of Bannum executed a lease agreement with Ken Webb who was held out by himself and defendant Foxworth as the owner of the property. Defendant Charles Foxworth continued to act in the capacity of authorized agent for the owner(s) of the property and caused the lease to be signed by the aforementioned Ken Webb.

29. Pursuant to said lease agreement, Bannum was required to pay monthly rent in the amount of $2,600 for the life of its contract with the Bureau of Prisons, including any and all Option periods. As indicated therein, Bannum's lease was to run concurrently with Bannum's contract with the Bureau of Prisons.

30. Ken and Michelle Webb had possession of the entire premises through a series of transactions, agreements, and other business arrangements with defendant McCray, from which all three parties benefited directly. As a result of their business relationship, defendant McCray and Ken and Michelle Webb were inextricably bound by various profit sharing arrangements,

management and consulting agreements, joint ventures, de facto partnerships, property transactions, guarantors and various other schemes over the course of several years.

31. Ken and Michelle managed the entire premises, and all tenants leasing space therein, for absentee owner defendant John McCray. Upon information and belief, defendant John McCray had several business interests which caused him to travel extensively and rely upon various agents, including Ken and Michelle Webb, to manage and otherwise look after his investments. Upon information and belief, Ken and Michelle Webb leased the premises to other parties several times previously with the knowledge and ratification of defendant McCray. These previous leases, as did Bannum's, served as significant sources of income for defendant McCray and Ken and Michelle Webb. Notably, defendant John McCray and Ken and Michelle Webb are all directors of "Delta Career Institute, Inc.," to which Bannum made some of its rent payments for the premises at issue.

32. In order for Bannum to be permitted to use the premises for its intended purpose as a "halfway house" under its contract, the United States Department of Justice required a zoning change and the issuance of a use permit by the City of Beaumont. Defendant Foxworth and Ken Webb agreed to be responsible for affecting said changes.

33. On or about February 24, 1997, defendant Foxworth completed, signed, and submitted to the City of Beaumont a zoning change application as authorized agent for the owners defendant John McCray and Ken Webb. Upon information and belief, defendant Foxworth and Ken Webb were desperate to fill the space in the building because Ken Webb owed defendant McCray a significant amount of money as a result of the declining profitability of the Delta Career Institute. According to Ken Webb, the Delta Career Institute had lost federal funding and was forced to cut back dramatically. As such, defendant Foxworth, acting as

authorized agent of defendant McCray and Ken Webb, instructed a City of Beaumont official to write "Ken Webb" along side "John McCray" in the space on the zoning application indicating the "owner" of the premises.

34. As a direct result of said zoning application, the City of Beaumont issued a use permit to Bannum for use of the premises as a "halfway house" pursuant to its contract with the Bureau of Prisons.

35. In July, 1997, Bannum notified defendants Foxworth and Ken and Michelle Webb that it had officially been awarded the contract with the Bureau of Prisons. At this time, without explanation, defendant Foxworth and Ken and Michelle Webb demanded that Bannum use a different space at the premises for purposes of its contract. Bannum agreed to do so at no additional cost contingent upon the BOP's approval of the change of space.

36. The BOP subsequently approved the aforementioned change in space. In order to make the space acceptable for use under its contract with the BOP, however, Bannum was forced to perform, at its expense, several costly renovations totaling approximately $90,000, including: improvement of the sprinkler system; installation of a new hardwire fire alarm system; upgrading the existing electrical system; providing additional plumbing; upgrading the ceiling; installing new carpet; and painting the interior of the building.

37. Bannum commenced operation of its BOP facility at the premises on November 7, 1997, at which time it began making monthly rent payments to "Delta Career Institute, Inc.," of which Ken Webb is the incorporator, president, and a director, Michelle Webb secretary, treasurer, and a director, and defendant John McCray a director. All monthly rent payments made by Bannum were timely and accepted by defendants McCray, Ken Webb, and Michelle Webb.

38. On or about February 12, 1998, defendant John McCray entered into an agreement with defendants Richard Compton and P.E. Compton (hereinafter collectively referred to as "the Comptons") and Ken and Michelle Webb, whereby the Comptons guaranteed the payments due from defendant Delta Career Institute which had defaulted on its agreement with defendant McCray. Pursuant to said agreement, the Comptons agreed to pay defendant John McCray nine thousand five hundred ninety-nine dollars and thirty-three cents ($9,599.33) per month during the initial period of the agreement, which ran for a period of five (5) years from January 1, 1998 through December 31, 2002. The agreement also contained two (2) ten (10) year option periods. At the time the aforementioned agreement was signed between defendants McCray and the Comptons, Bannum was still operating its halfway house on the premises pursuant to its contract with the BOP.

39. To date, Bannum has made rent payments totaling in excess of $114,400, fifteen (15) of which were made directly to Delta Career Institute as originally agreed by the parties. However, in 1998, Ken and Michelle Webb instructed Bannum to send lease payments to Delta Career Institute to a different address in Poway, California. Then, on or about February 10, 1999, Michelle Webb directed Bannum to start making monthly rent payments directly to defendant John McCray. Bannum complied with said requests, and defendant McCray accepted rent payments directly from Bannum starting in February, 1999.

40. Due to declining profitability of the Delta Career Institute, in 1999 defendant John McCray assumed sole direct operating control of the premises in which Bannum was operating its halfway house for the Federal Government. During this time, Bannum had not spoken directly with defendant McCray, but rather communicated with him through various agents. At no time did defendant McCray, nor any of his agents, challenge Bannum's lease of the premises

or assert that Bannum was only a month-to-month tenant. Defendant McCray ratified the lease with Bannum by, *inter alia*, his receipt and acceptance of monthly lease payments from Bannum, as well as by the actions of his several agents in attempting to negotiate increases in lease rates, recognizing set-off payments, and addressing necessary maintenance requirements for which Bannum solicited estimates forwarded to his attention.

41. On or about May 23, 2000, Bannum sent a letter, through its attorney, to defendant John McCray advising him of some roof repairs that needed to be made pursuant to the lease agreement between the parties. In response thereto, defendant John McCray, without objection, proceeded to perform the repairs requested in accordance with the lease agreement referenced in Bannum's letter.

42. At some point in 2000, defendant John McCray conspired with "Richard Milburn Academy/Beaumont" (hereinafter "Richard Milburn") to force Bannum from the premises, at which time Richard Milburn would assume occupancy and lease of the premises which Bannum occupied. On or about December 4, 2000, the parties executed a formal lease agreement for the premises which Bannum still occupied pursuant to a valid lease agreement. Pursuant to said lease agreement, Richard Milburn agreed to pay defendant John McCray a monthly rent of $3,991.68 for the period of January 1, 2001 through June 30, 2003. Later in December, 2000, the parties agreed to increase the monthly rent to $4,665.60. Notably, this was almost twice the monthly amount that Bannum was paying ($2,600) under its lease which did not terminate until its contract with the Government ended.

43. Included as a "Special Provision" of said lease between defendants Richard Milburn and John McCray is a clause which states, *inter alia*, the following:

LANDLORD WILL GIVE 30 DAY NOTICE TO BANNUMS

(sic) INC. TO VACATE UPON LEASE SIGNING. LANDLORD WILL PERSUE (sic) ALL LEGAL MEANS TO ENFORCE BANNUMS (sic) INC. VACATING PROPERTY.

44. Soon thereafter, on December 8, 2000, without explanation, authority, or justification to do so, defendant Foxworth, through his agent Lee Wheeler, sent Bannum a notice of eviction, wherein he instructed Bannum that defendant John McCray wants it out of the building on or before January 8, 2001. Upon information and belief, prior to sending said notice of eviction to Bannum, defendant Foxworth, and/or its agent(s), notified the Bureau of Prisons that it was planning to evict Bannum from the premises. Furthermore, said defendants continued to communicate with the BOP, unbeknownst to Bannum, following the issuance of the notice of eviction. Upon information and belief, defendant John McCray also had secret communications with the BOP regarding Bannum and its lease of the premises. Specifically, upon information and belief, the Defendants conspired with Chuck Ala, Community Corrections Contract Oversight Specialist ("CCCOS") for the BOP, to attempt to force Bannum to lose its contract with the BOP by evicting it from the facility in Beaumont, Texas. Upon information and belief, Chuck Ala wanted Bannum's contract to be terminated for default because Bannum had, on numerous occasions, complained to BOP officials of the bad faith conduct and contractual interference of Chuck Ala. Chuck Ala was further motivated to get Bannum's contract terminated because Bannum had filed several contract Requests for Equitable Adjustment ("REA's") and "Claims" with the BOP as a direct result of Chuck Ala's conduct.

45. At the time of this Complaint, approximately fifteen-thousand (15,000) square feet of space remains vacant and not listed at the premises at issue in this proceeding.

46. Bannum has continued to make rent payments directly to John McCray up through the date of the filing of this Complaint. Defendant McCray has accepted said rent

payments and benefited financially directly therefrom.

47. As a direct result of the defendants' fraud, the BOP issued a "Cure Notice" to Bannum on December 26, 2000, wherein it directed Bannum that it was considering terminating its contract for default based on the aforementioned notice of eviction received from defendant Foxworth.

48. Based on the foregoing, Bannum filed a civil action in Texas District Court for Jefferson County in December, 2000 [Bannum, Inc. v. Ken Webb, John McCrey, et al., Cause No. D-164,349 (hereinafter referred to as "the Texas action") against defendant John McCray, Delta Career Institute, and Foxworth Real Estate, seeking declaratory and injunctive relief, as well as damages for breach of contract and various other statutory and common law causes of action.

49. Following a hearing on the matter, the Texas Court granted Bannum's Motion for a Temporary Restraining Order preventing defendant McCray from evicting Bannum.

50. Subsequently, the Texas Court severed Ken and Michelle Webb who had filed for bankruptcy in California, and quashed a motion filed by Bannum to depose Ken and Michelle Webb. Bannum sought the depositions of Ken and Michelle Webb in an effort to develop evidence that they were agents of John McCray with whom Bannum has signed a lease.

51. Following the Texas Court's rulings stated above, Bannum filed a non-dischargeable adversary proceeding based upon fraud against Ken and Michelle Webb in Bankruptcy Court in California. Based upon said filing, Bannum moved the Texas State Court for a continuance to conduct the depositions, and inspect the books and records and related documents, of Ken and Michelle Webb. In response thereto, the Texas Court granted a one (1) week continuance to allow Bannum to attempt to find and depose Ken and Michelle Webb.