**CONTINUATION SHEET**

REFERENCE NO. OF DOCUMENT BEING CONTINUED: Contract J200c-397



NAME OF OFFEROR OR CONTRACTOR: Bannum, Inc., Montgomery, Alabama area

AWARD/CONTRACT CONTINUED --

9. Bannum, Inc. shall submit bi-monthly progress reports to the Contracting Officer, beginning two weeks after the date of contract award, informing her of Bannum's progress in bringing the facility into compliance by the October 1, performance date of the contract.

10. Bannum, Inc. shall submit valid documentation (i.e., building inspection certificate) to the Contracting Officer from a City of Montgomery official certifying/approving the facility and its renovations, including the handicapped accessibility renovations.

11. PART II - SECTION I, CONTRACT CLAUSES

| | |
|---|---|
| Revise: | FAR 52.216-19, Order Limitations (OCT 1995) **(Full Text)** |
| Revise: | FAR 52.222-35, Affirmative Action for Special Disabled and Vietnam Era Veterans (APR 1998) **(Full Text)** |
| Revise: | FAR 52.222-37, Employment Reports on Special Disabled Veterans and Veterans of the Vietnam Era (APR 1998) |
| Revise: | FAR 52.252-2, Clauses Incorporated by Reference (FEB 1998) **(Full Text)** |

BOP7485

## SECTION F - DELIVERIES OR PERFORMANCE

**F.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION (48 CFR CHAPTER 1) CLAUSES

| NUMBER | TITLE | DATE |
|---|---|---|
| **52.242-15** | **STOP-WORK ORDER** | **AUG 1989** |

**F.2 DELIVERIES**

In accordance with FAR 16.505(a) and the clause located at FAR 52.216-18 entitled "Ordering," included in Part II, Section I, of this contract, any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders by the individuals listed below:

Michelle Aceto/Anthony Bigesby, Contract Specialist, Washington, D.C.

Donald Comer/Lenard Foust, Contract Specialist, Washington, D.C.

Elaine Peebles/Jacqueline Ponders, Contract Specialist, Washington, D.C.

Katharina Washington/Leah Wilson, Contract Specialist, Washington, D.C.

Pamela Wrentz, Contract Specialist, Washington, D.C.

Bonnie Sinsel, Supervisory Contract Specialist, Washington, D.C.

**F.3 PERFORMANCE**

(a) The Contractor's facility must be fully operational and ready for performance to begin within approximately 90 days after the date of contract award. (For the purpose of this solicitation, "contract award" is defined as the date the award document (either the Standard Form 33 or Standard Form 26) is signed by the Contracting Officer.)

(b) The anticipated periods of performance include:

Base Period: October 1, 1998 through September 30, 2000
Option Year 1: October 1, 2000 through September 30, 2001
Option Year 2: October 1, 2001 through September 30, 2002
Option Year 3: October 1, 2002 through September 30, 2003

(c) The contract shall be effective from date of award through September 30, 2000, with the Government's unilateral right to exercise the 3 individual option periods in accordance with the terms of this contract.

(d) Performance requirements of this solicitation and resulting contracts are estimates only. These estimates are not representations to offerors or contractors that the estimated requirements will be ordered.

(e) In accordance with FAR 52.217-9(a), entitled, "Option to Extend the Term of the Contract," the Government may exercise the option year provided notice shall be given to the Contractor by the first day of the ensuing option year.

(f) In accordance with FAR 52.217-8, entitled, "Option to Extend Services," the Government may require continued performance of any services within the limits and at the rates specified in the contract. The Contracting Officer may exercise this option by unilateral modification provided to the Contractor no later than the first day of the ensuing option year.

(g) The anticipated period(s) of performance are based on the assumptions that funds are available and the Government will make award on or about July 1, 1998. The initial performance period will depend on the actual date of award and the issuance of a written award or acceptance of offer mailed or otherwise furnished to the successful offeror to result in a binding contract.

**F.4 PLACE OF PERFORMANCE**

(a) The Place of Performance is: Montgomery, Alabama area.

(b) In accordance with FAR 46.503 and FAR 46.403(a)(6), the Place of Acceptance for services under this contract shall be at DESTINATION.

52.216-19 DELIVERY-ORDER LIMITATIONS (OCT 1995)

(a) Minimum order. When the Government requires supplies or services covered by this contract in an amount of less than (no minimum), the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) Maximum order. The Contractor is not obligated to honor--

(1) Any order for a single item in excess of (no maximum);

(2) Any order for a combination of items in excess of (no maximum); or

(3) A series of orders from the same ordering office within (365) days that together call for quantities exceeding the limitation in subparagraph (1) or (2) above.

(c) If this is a requirements contract (i.e., includes the Requirements clause at subsection 52.216-21 of the Federal Acquisition Regulation (FAR)), the Government is not required to order a part of any one requirement from the Contractor if that requirement exceeds the maximum-order limitations in paragraph (b) above.

(d) Notwithstanding paragraphs (b) and (c) above, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within (10) days after issuance, with written notice stating the Contractor's intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

[End of Text]

A.1 52.222-35 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (APR 1998)

(a) Definitions. As used in this clause--

"All employment openings" includes all positions except executive and top management, those positions that will be filled from within the contractor's organization, and positions lasting 3 days or less. This term includes full-time employment, temporary employment of more than 3 days' duration, and part-time employment.

"Appropriate office of the State employment service system," means the local office of the Federal-State national system of public employment offices with assigned responsibility to serve the area where the employment opening is to be filled, including the District of Columbia, Guam, the Commonwealth of Puerto Rico, and the Virgin Islands.

"Positions that will be filled from within the Contractor's organization" means employment openings for which no consideration will be given to persons outside the Contractor's organization (including any affiliates, subsidiaries, and parent companies) and includes any openings that the Contractor proposes to fill from regularly established "recall" lists. The exception does not apply to a particular opening once an employer decides to consider applicants outside of its organization.

"Veteran of the Vietnam Era" means a person who--

(1) Served on active duty for a period of more than 180 days, any part of which occurred between August 5, 1964, and May 7, 1975, and was discharged or released therefrom with other than a dishonorable discharge; or

(2) Was discharged or released from active duty for a service-connected disability if any part of such active duty was performed between August 5, 1964 and May 7, 1975.

(b) General. (1) Regarding any position for which the employee or applicant for employment is qualified, the Contractor shall not discriminate against the individual because the individual is a disabled veteran or a veteran of the Vietnam era. The Contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination based upon their disability or veterans' status in all employment practices such as --

(i) Employment;

(ii) Upgrading;

(iii) Demotion or transfer;

(iv) Recruitment;

(v) Advertising;

(vi) Layoff or termination;

(vii) Rates of pay or other forms of compensation; and

(viii) Selection for training, including apprenticeship.

(2) The Contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (the Act), as amended.

(c) Listing openings. (1) The Contractor agrees to list all employment openings existing at contract award or occurring during contract performance, at an appropriate office of the State employment service system in the locality where the opening occurs. These openings include those occurring at any Contractor facility, including one not connected with performing this contract. An independent corporate affiliate is exempt from this requirement.

(2) State and local government agencies holding Federal contracts of $10,000 or more shall also list all employment openings with the appropriate office of the State employment service.

(3) The listing of employment openings with the State employment service system is required at least concurrently with using any other recruitment source or effort and involves the obligations of placing a bona fide job order, including accepting referrals of veterans and nonveterans. This listing does not require hiring any particular job applicant or hiring from any particular group of job applicants and is not intended to relieve the Contractor from any requirements of Executive orders or regulations concerning nondiscrimination in employment.

(4) Whenever the Contractor becomes contractually bound to the listing terms of this clause, it shall advise the State employment service system, in each State where it has establishments, of the name and location of each hiring location in the State. As long as the Contractor is contractually bound to these terms and has so advised the State system, it need not advise the State system of subsequent contracts. The Contractor may advise the State system when it is no longer bound by this contract clause.

(d) Applicability. (1) This clause does not apply to the

listing of employment openings that occur and are filled outside the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, and the Virgin Islands.

(2) The terms of paragraph (c) above of this clause do not apply to openings that the Contractor proposes to fill from within its own organization or under a customary and traditional employer-union hiring arrangement. This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of its own organization or employer-union arrangement for that opening.

(e) Postings. (1) The Contractor agrees to post employment notices stating

(i) The Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era; and

(ii) The rights of applicants and employees.

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Deputy Assistant Secretary for Federal Contract Compliance Programs, Department of Labor (Deputy Assistant Secretary), and provided by or through the Contracting Officer.

(3) The Contractor shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the Contractor is bound by the terms of the Act, and is committed to take affirmative action to employ, and advance in employment, qualified disabled veterans and veterans of the Vietnam era.

f) Noncompliance. If the Contractor does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Act.

g) Subcontracts. The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary. The Contractor shall act as specified by the Deputy Assistant Secretary to enforce the terms, including action for noncompliance.

xt]

BOP7491

52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address(es):

http://www.arnet.gov/far/

[End of Text]

09/20/01 THU 12:30 FAX 202 307 2780 Comm. Corr. Contracting 006

OMB No. 1103-0018
Expiration Date: 02/28/2001

# AWARD/CONTRACT

1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350)

RATING

PAGE 1 OF PAGES 4

2. CONTRACT (Proc. Inst. Ident.) NO. J200c-562

3. EFFECTIVE DATE 11/01/01

4. REQUISITION/PURCHASE REQUEST/PROJECT NO. 281/Spencer

5. ISSUED BY CODE
Federal Bureau of Prisons
Community Corrections Contracting
320 First Street, NW
Suite 5006
Washington DC 20534

6. ADMINISTERED BY (If other than Item 5) CODE
Sheila J. Thompson
Contracting Officer
202-307-3070

ORIGINAL

7. NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State & Zip Code)
Bannum, Inc.
Attn: David A. Lowry
1301 Seminole Blvd., Suite 126
Largo, FL 33770

CODE FACILITY CODE

8. DELIVERY
☐ FOB ORIGIN ☒ OTHER (See below)
Destination

9. DISCOUNT FOR PROMPT PAYMENT
Net 30

10. SUBMIT INVOICES TO THE ADDRESS SHOWN IN: (4 copies unless otherwise specified) 12 — ITEM: See item G-3 (RFP)

11. SHIP TO/MARK FOR CODE

12. PAYMENT WILL BE MADE BY CODE
Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, SW
Building 2000
Atlanta, GA 30331-6226

13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:
☐ 10 U.S.C. 2304 (c) ( ) ☐ 41 U.S.C. 253 (c) ( )

14. ACCOUNTING AND APPROPRIATION DATA
Funds will be obligated by each delivery ord
FP-03-00-T1-414-2506-N-08 YREGDOC # 2T110016

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| 0001 | Provide Community Correction Center Services in the Montgomery, Alabama area and in accordance with RFP-200-0637-SE. | | | | |
| | **ESTIMATED BASE PERIOD** | 15G. TOTAL AMOUNT OF CONTRACT | | | $1,323,855.00 |

16. TABLE OF CONTENTS


| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | | X | I | CONTRACT CLAUSES | |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | | X | J | LIST OF ATTACHMENTS | |
| | D | PACKAGING AND MARKING | | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | G | CONTRACT ADMINISTRATION DATA | | | M | EVALUATION FACTORS FOR AWARD | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | | | | | |


CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

17. ☐ CONTRACTOR'S NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return* 2 *copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD *(Contractor is not required to sign this document.)* Your offer on Solicitation Number RFP 200-0637-SE including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER *(Type or print)*
David A. Lowry
Executive Director

20A. NAME OF CONTRACTING OFFICER
Katharina Washington
Contracting Officer

19B. NAME OF CONTRACTOR
BY [signature]
(Signature of person authorized to sign)

19C. DATE SIGNED 9-20-01

20B. UNITED STATES OF AMERICA
BY [signature: Katharina Washington]
(Signature of Contracting Officer)

20C. DATE SIGNED 9/25/01

PREVIOUS EDITION UNUSABLE

STANDARD FORM 26 (REV. 4-85)
Prescribed by GSA FAR (48 CFR) 53.214(a)

Business, Past Performance, and Technical Proposal, signed by David A. Lowry, Executive Director, Bannum, Inc. on January 26, 2001.

Amendment No. 1 Dated February 5, 2001
Amendment No. 2 Dated February 16, 2001
Amendment No. 3 Dated May 16, 2001

Discussion Letters: Dated April 6, 2001
Dated April 20, 2001
Dated May 29, 2001
Dated July 11, 2001

Revised Final Proposal dated August 6, 2001.

Letter dated August 30, 2001 waiving the 120 day notification period.

Community Corrections Center (CCC) Services:

Based Period - November 1, 2001 - October 31, 2003
Option Year 1 - November 1, 2003 - October 31, 2004
Option Year 2 - November 1, 2004 - October 31, 2005
Option Year 3 - November 1, 2005 - October 31, 2006

2. Performance shall begin no later than November 1, 2001, and/or upon Notice to Proceed.

The Government intends to refer all eligible CCC requirements under this solicitation to the successful contractor.

3. Base Period and Option Year dates are as follows:

Based Period - November 1, 2001 - October 31, 2003
Option Year 1 - November 1, 2003 - October 31, 2004
Option Year 2 - November 1, 2004 - October 31, 2005
Option Year 3 - November 1, 2005 - October 31, 2006

4. The rate for the Base Period and Option Years shall be at a rate of $60.45 per inmate day as specified in the Final Proposal Revisions. The inmate days are as follows:

Base Period - 21,900
Option Year 1 - 10,950
Option Year 2 - 10,950
Option Year 3 - 10,950

5. Include Sheila J. Thompson, Contracting Officer, Washington, DC to the list of individuals for deliveries in Section F of the schedule.

6. Replace the following FAR Clauses in Section I:

| | |
|---|---|
| 52.202-1 | Definitions (MAY 2001) |
| 52.223-6 | Drug-Free Workplace (MAY 2001) |
| 52.232-25 | Prompt Payment (MAY 2001) |
| 52.219-1 | Small Business Program Representation (MAY 2001) |

7. Replace the following FAR Clause in Section I:

52.244-6 Subcontracts for Commercial Items and Commercial Components (May 2001)

(a) Definitions. As used in this clause

Commercial item has the meaning contained in the clause at 52.202-1, Definitions.

Subcontract includes a transfer of commercial items between divisions, subsidiaries, or affiliates of the Contractor or subcontractor at any tier.

(b) To the maximum extent practicable, the Contractor shall incorporate, and require its subcontractors at all tiers to incorporate, commercial items or nondevelopmental items as components of items to be supplied under this contract.

(c)(1) The following clauses shall be flowed down to subcontractors for commercial items:

(i) 52.219-8, Utilization of Small Business Concerns (OCT 2000) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (FEB 1999) (E.O. 11246).

(iii) 52.222-35, Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (APR 1998)(38 U.S.C. 4212(a)).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (JUN 1998) (29 U.S.C. 793).

(v) 52.247-64, Preference for Privately Owned U.S. - Flagged Commercial Vessels (JUN 2000) (46 U.S.C. Appx 1241) (flowdown not required for subcontracts awarded beginning May 1, 1996).

(2) While not required, the Contractor may flow down to subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(d) The Contractor shall include the terms of this clause, including this paragraph (d), in subcontracts under this contract.

(End of Clause)

8. Correct the following FAR Provision to read:

52.216-1 Type of Contract - The Government contemplates award of a firm-fixed, unit-price requirements type contract .....

9. Update FAR 52.204-1 Approval of Contract (DEC 1989) to read .. approval of the Acquisition Branch and ...

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

August 6, 2001

Sheila Thompson
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

Re: RFP 200-0637-SE
Montgomery, AL

Dear Ms. Thompson:

This letter is in response to your request for Final Proposal Revision concerning the above referenced RFP. The following represents Bannum's response.

Bannum's Final Proposal Revision is as follows:

| | |
|---|---|
| Base Period | $60.45 |
| Option Year 1 | 60.45 |
| Option Year 2 | 60.45 |
| Option Year 3 | 60.45 |

Bannum has previously provided proof of zoning and adherence to all local ordinance requirements with respect to this RFP; in fact, we are the incumbent contractor and have provided CCC services at this location for eight (8) years and in Montgomery, Alabama for over fifteen (15) years.

Attached is a copy of proof of liability insurance for Gus Singleton of New Deal Cab Company. Also attached are copies of "Authorization to Release Confidential Information" for the facility Director and corporate officials.

Please let me know if I can be of any further assistance

Sincerely,

David A. Lowry

## SECTION C - DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

### C.1 STATEMENT OF WORK

A description of the services to be performed is given in the Statement of Work as an attachment in this section, identified as "Statement of Work, Community Corrections Center," dated December 1992 (modified July 1997), containing 123 pages.

# STATEMENT OF WORK

# COMMUNITY CORRECTIONS CENTER

DECEMBER 1992

WITH ALL SUBSEQUENT REVISIONS

(LATEST REVISION - JULY 1997)

residence will be specified by the pre-trial services official referring the case for placement. Pre-trial status offenders are the sole responsibility of Pre-trial Services/U.S. Courts.

18. **U. S. Probation Officer (USPO):** An officer of the Federal Courts responsible for supervising federal offenders placed on probation or under supervised release by Federal Courts. Probation Officers also supervise mandatory releasees and those released on parole by the United States Parole Commission (USPC).

D. **SCOPE OF WORK**

The contractor shall furnish the necessary facilities, equipment, and personnel to provide for the safekeeping, care, and program needs of persons residing in centers as defined in this contract.

The contractor has affirmative responsibility to ensure proper management oversight of their program. Absentee ownership does not mitigate program integrity, responsiveness or responsibility.

The contractor shall develop operational policies and procedures that adhere to the requirements contained in this SOW and to generally accepted correctional practice as defined by the COTR.

Except as otherwise provided for in this SOW, all offenders shall receive the same treatment and services.

All instances of unusual and/or non-routine happenings concerning the facility or inmate management must be telephonically communicated to the CCM immediately, and in writing within three (3) working days.

The contractor shall comply with all requirements outlined in this SOW. The requirements of the SOW are minimum requirements and take precedence over the contractors proposal in the event of any conflict or ambiguity.

The BOP reserves the right to enter into negotiations with the contractor to modify conditions or procedures within this statement of work and contract, so long as those negotiations do not result in a significant change.

# CHAPTER 3 - FACILITY

A. The facility shall be located within one mile of public transportation, or the contractor shall provide for transportation of residents for employment or program participation activities at no cost to the resident.

B. Facilities/programs located in operational hotels/motels will not be considered as an acceptable physical plant.

The federal residential program shall be separate and apart from any other program initiatives/activities within the facility.

C. The facility shall be located in an area where the commuting time to the general area of work is ordinarily no more than one and one-half hours each way via public transit. The contractor shall arrange for transportation for indigent residents while seeking employment, at no cost to the resident.

D. The facility's sleeping quarters shall have adequate ventilation of outside or recirculated filtered air. The BOP authority having jurisdiction determines if adequate natural or mechanical ventilation is present.

E. All resident personal living/sleeping areas in the facility shall have lighting of at least twenty (20) foot candles. Lighting in washroom and resident grooming areas shall have lighting of at least thirty (30) foot candles. Illumination for walk-in refrigerator, freezer, closet and/or storage areas shall be at least ten (10) foot candles.

F. A minimum of six square meters (sixty (60) square feet) of sleeping space shall be provided each resident of which no more than .4 square meters (four square feet) is closet

average of two weeks 25% divided by seven = average daily per diem rate). Payments are made at the conclusion of each week (or bi-weekly if applicable) of residence -- ONLY THE LAST WEEK'S SUBSISTENCE MAY BE COLLECTED IN ADVANCE. Contractors shall reduce the monthly billing to the BOP by the amount collected in subsistence. Additionally, contractors shall list gross wages on their monthly bills and submit documentation with their bill submission for all instances where no subsistence is collected.

Social activities, passes, furloughs, and other privileges may be withheld pending a resident's subsistence payments. Failure to pay subsistence payments may result in disciplinary action, including termination from the program.

In individual cases with very unusual circumstances, CCMs may waive or reduce resident subsistence payments. Such cases must be fully documented.

Court orders that require supervision residents to pay part or all of the cost of their residence take precedence over the 25% subsistence policy. If the cost of confinement is indicated, this payment may not exceed the daily manday rate, times seven per week. Contractors shall collect the payments and deduct the amounts from the monthly billings to the BOP, unless disposition of the monies is otherwise specified by the court. In the absence of a court order, supervision residents are responsible for subsistence payments as outlined in this section.

E. <u>**Employment**</u>:

Gainful employment of residents is a fundamental expectation of the BOP.

1. The contractor shall develop <u>meaningful</u> resident employment opportunities. Meaningful employment means the matching of jobs to resident needs, aptitudes, desires, and capabilities.

2. To the extent needed, contractor staff shall assist the resident in seeking employment. Residents are ordinarily expected to secure full-time employment within fifteen working days. For purposes of this contract, full-time employment is defined as one or more jobs totalling forty hours per week. Any proposed employment plan that is less than full-time, requires the approval of the CCM and must be

fully documented. Records will be reviewed during monitorings by the CCM.

3. Each resident's employment requires the contractor's written approval. The contractor will ensure through documentation that the resident's employer is aware of the resident's legal status. When written correspondence is utilized, it shall be delivered via U.S. Mail, not hand delivered by the resident. Any changes in a resident's employment shall require advance approval by the contractor.

4. For each job a resident acquires, the contractor shall verify employment by a random, on-site visit during the first seven days, and document the visit in case notes to include date and the title of the person contacted. Thereafter, at least monthly, the resident's employment supervisor shall be telephonically contacted to substantiate attendance and discuss any problems which may have arisen. On at least one other occasion each month, the resident shall be telephonically contacted to ensure accountability. The contractor shall complete additional contacts as necessary. All contacts concerning a resident's employment shall be documented in the case notes.

   All requests to modify or waive the contractor requirements contained in #3 and #4 above for residents under supervision, must be submitted in writing to the contractor by the supervising USPO, with a copy to the CCM.

5. Restriction from work shall not be used as a disciplinary sanction.

6. With the advancement of technology and the use of beepers and cellular phones in the work place, there is a need to monitor the legitimate use of this equipment. When CCC staff believe it is essential for a resident to maintain a beeper, cellular telephone, etc., in the performance of his/her work, the following procedures shall be followed:

   a. Residents will make a written request to the CCC Director stating the specific need and use for the electronic communication equipment. The CCC Director will verify the legitimate need and forward the request for approval to the CCM. A copy of the request (approved or disapproved) will be returned to the CCC Director with a copy to the resident's file.

# CHAPTER 20 - INSPECTIONS

The contractor shall be responsible to ensure performance is in accordance with this SOW. The COS and/or CCM monitors compliance with the SOW on a systematic and routine basis by various means, including on-site inspections. The results of these inspections shall be brought to the attention of the contractor through consultations and narrative reports, commonly referred to as monitoring reports.

Monitoring reports contain all findings of the inspection and shall express deviations from the SOW in the following terms:

A. **Findings:**

Findings result when evidence indicates the conditions of this SOW are not being met, as determined by the CCM.

B. **Corrective Action:**

The tasks, or group of tasks, necessary to resolve a finding.

C. **Recommendations/Comments:**

Suggestions to the contractor of ways to modify procedures or practices that improve facility operations. Areas that are in need of improvement but do not meet the criteria of a finding.

Upon receipt of the report the contractor shall be responsible for drafting a response to the CCM within 30 days, unless directed otherwise by the CCM. The response shall note corrective what action was taken and when it was taken. In the event constraints are identified the contractor shall establish a realistic timeframe for corrective action being completed.

Failure to respond to the monitoring report or to take corrective action to the findings may result in adverse action up to and including the termination of the contract.

# STATEMENT OF WORK

## COMMUNITY CORRECTIONS CENTER

## WITH

## TRANSITIONAL DRUG TREATMENT SERVICES

AUGUST, 1996

**CHAPTER 3 - FACILITY**

A. The facility shall be located within one mile of public transportation, or the contractor shall provide for transportation of residents for employment or program participation activities at no cost to the resident.

B. The contractor shall ensure the facility is not located in an area where public concern or opposition would have an adverse effect on the community or the residents. The contractor shall provide copies of documentation indicating the community where the facility is located has been advised of the program and purpose. This documentation may include, but is not limited to, letters or petitions signed by the elected or appointed officials in the facility's geopolitical subdivision, letters from the adjacent property owners and other residents, and other material supporting the community has been made aware of the contractor's intent to locate and operate the CCC program at the contractor's specified address. Letters from adjacent property owners and other residents shall include name, address, and their respective location to the proposed facility.

The facility shall not be a part of an operating hotel/motel.

C. The facility shall be located in an area where the commuting time to the general area of work is ordinarily no more than one and one-half hours each way via public transit. The contractor shall arrange for transportation for indigent residents while seeking employment, at no cost to the resident.

D. The facility's sleeping quarters shall have adequate ventilation of outside or recirculated filtered air. The BOP authority having jurisdiction determines if adequate natural or mechanical ventilation is present.

E. All resident personal living/sleeping areas in the facility shall have lighting of at least twenty (20) foot candles. Lighting in washroom and resident grooming areas shall have lighting of at least thirty (30) foot candles. Illumination for walk-in refrigerator, freezer, closet and/or storage areas shall be at least ten (10) foot candles.

## SECTION C

## DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

**C.1 STATEMENT OF WORK/SPECIFICATION**
A description of the services to be performed is given in the Statement of Work as an attachment in this section, identified as "Statement of Work, Community Corrections Center (CCC)" dated 2000.

**[There Are No Clauses Included In This Section]**

[END OF SECTION]

# STATEMENT OF WORK

(SOW)

COMMUNITY CORRECTIONS CENTER

(CCC)

2000

# INTRODUCTION

The Bureau of Prisons (BOP) provides community-based residential and nonresidential correctional services through contractual agreements with state, county and city governments and private corrections contractors. These contractors provide services which include employment and residence development and other self-improvement opportunities to assist federal offenders in becoming law-abiding citizens.

1. OBJECTIVE. The objective is to establish a Community Corrections Center (CCC) that provides comprehensive community-based services for offenders, i.e., offenders who are in the custody of the BOP, United States Attorney General, or under the supervision of the United States Probation Office (USPO).

2. STATEMENT OF WORK (SOW). The SOW sets forth the contract performance requirements for the management and operation of a CCC for federal offenders. The contractor shall ensure that the CCC operates in a manner consistent with the mission of the BOP. The mission is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost efficient and appropriately secure, that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

3. PLACEMENT OF OFFENDERS. Only the Community Corrections Manager (CCM) can approve a federal offender's placement at a CCC.

4. CONTRACTOR'S RESPONSIBILITY. The contractor shall furnish all personnel, management, equipment, supplies and services necessary for performance of all aspects of the contract. Unless explicitly stated otherwise, the contractor is responsible for all costs associated with and incurred as part of providing the services outlined in this contract.

5. BOP'S PHILOSOPHICAL BASE. The BOP can successfully carry out its mission because its operations are firmly grounded in a set of common values and functional goals. A clear vision of the BOP's organizational and individualized responsibilities exist among employees. The BOP, as an organization, has a "culture" – a set of values and shared attitudes that guide staff's actions. These values are a source of pride and professionalism to all employees, as they see them reflected in safe, humane and cost effective operations, and in the fair treatment of offenders. The following values are important for contract employees to

understand, because they describe some of the major portions of the BOP's culture.

- Sound Correctional Management – The BOP maintains effective security and control of its offenders in CCC facilities utilizing the least restrictive means necessary. This approach is the essential foundation of all sound correctional management programs.

- Correctional Workers First – All BOP employees share with contract employees a common role as correctional workers and a mutual responsibility for maintaining safe and secure facilities and for modeling society's mainstream values and norms to offenders.

- Promotes Integrity – The BOP firmly adheres to a set of values that promotes honesty, integrity, and professionalism in order to ensure public confidence in its programs. These values also include the agency's prudent use of its allocated resources.

- Recognizes the Dignity of All – Recognizing the inherent dignity of all human beings and their potential for change, the BOP treats offenders fairly, is responsive to their needs, and affords them opportunities for self-improvement to facilitate successful re-entry into the community. The BOP recognizes that offenders are incarcerated as punishment, not for punishment.

- Community Relations – The BOP recognizes and facilitates the integral role of the community in accomplishing the BOP's mission. The BOP also works cooperatively with other law enforcement agencies, the Courts, and other components of the Government. BOP staff visit regularly with CCC contract employees to exchange information on areas of mutual concern. CCCs have proven to be invaluable in maintaining a productive link between the institution and the community in which it is located.

- High Standards – The BOP requires high standards of staff integrity, safety, security, sanitation, and discipline, which promotes a physically and emotionally sound environment for both staff and offenders.

One of the most important things a contract employee can do – for offenders and for society – is to motivate offenders to take advantage of self-improvement opportunities while confined. Contract employees also have an important responsibility to provide a model of mainstream values and standards to offenders in their daily lives and their work in the community. These

elements – helping and motivating – call for a caring attitude toward offenders, one that sensibly meshes with the BOP's responsibility to protect society with the joint role the BOP has with the community and offender during the rehabilitation process.

Contract employees need to be firm but fair, humane but careful, in their interactions with offenders. It is possible to maintain security without compromising humane offender care.

Corrections is an important part of the rehabilitative process – offering the programs and services that can help offenders when they return to the community. Offenders should be provided information on these programs, presented in a way that encourages and motivates them to participate.

The CCC has an obligation to provide offenders with an opportunity to acquire the "tools" for self-improvement and law-abiding behavior upon release. Offenders must participate in maintaining family and community ties, through correspondence, visitation and planning for eventual release through participation in pre-release classes and other programs. They have the obligation to honor their debts and begin payment while confined. Each offender is personally responsible for taking advantage of available CCC programs.

These are important guiding principles for contract employees. They provide direction for decisions that carry out the BOP's mission. They also are the foundation of many expectations that the BOP will place on contract employees throughout performance of the contract.

6. CONTRACT PERFORMANCE. All services and programs shall comply with the SOW; the U.S. Constitution; all applicable federal, state and local laws and regulations; applicable Presidential Executive Orders (E.O.); all applicable case law; and Court Orders. Should a conflict exist between any of the aforementioned standards, the most stringent shall apply. When a conflict exists and a conclusion cannot be made as to which standard is more stringent, the BOP shall determine the appropriate standard. The contractor shall comply with and implement any applicable changes to BOP policy, Department of Justice (DOJ) regulation, Congressional mandate, Federal law or E.O.

Should the BOP invoke such changes, the contractor retains rights and remedies to equitable adjustment under the terms and conditions of the contract.

BOP reserves the right to enter into negotiations with the contractor to change the conditions or procedures in this SOW and contract.

BOP reserves the right to have various staff monitor contract performance. The BOP reserves the right to conduct announced and unannounced inspections of any part of the facility at any time and by any method to assess contract compliance. The BOP may investigate any incident pertaining to the performance of this contract. The contractor shall comply and cooperate with the BOP on all investigations, monitoring visits, inspections and inquiries.

The contractor shall report all criminal activity related to the performance of this contract to the appropriate law enforcement investigative agency, e.g., Federal Bureau of Investigation, United States Marshals Service, state and local authorities, and immediately notify the CCM of the report. The contractor shall immediately report to the CCM any person or agency requesting to use an offender in any investigation.

The contractor shall submit any request for contract changes through the CCM to the Contracting Officer (CO) for approval.

Should electronic media, e.g., the Internet, be used by the contractor, the contractor shall manage the information in accordance with Federal law, regulations and policies of the U.S. Department of Justice and BOP. Offenders shall not have direct access to the Internet in the facility.

The BOP Internet web page (WWW.BOP.GOV) is available to the contractor as a resource for information.

7. SCOPE OF WORK. The contractor shall comply with all requirements in this SOW and other reference documents as indicated. The technical proposal is incorporated into the contract unless otherwise stated in the contract or defined by the CCM.

The contractor has affirmative responsibility to ensure proper management and oversight of their program. Absentee ownership shall not mitigate program integrity, responsiveness or responsibility.

The contractor shall protect, defend, indemnify, save and hold harmless the United States Government, the BOP and its employees or agents, from and against any and all claims, demands, expenses, causes of action, judgements and liability arising out

of, or in connection with, any negligent acts or omissions of the contractor, its agents, subcontractors, employees, assignees or any one for whom the contractor may be responsible.

The contractor shall also be liable for any and all costs, expenses and attorneys fees incurred as a result of any such claim, demand, cause of action, judgement or liability, including those costs, expenses and attorneys fees incurred by the United States Government, the BOP and its employees or agents. The contractor's liability shall not be limited by any provision or limits of insurance set forth in the resulting contract.

In awarding the contract, the Government does not assume any liability to third parties, nor will the Government reimburse the contractor for its liabilities to third parties, with respect to loss due to death, bodily injury, or damage to property resulting in any way from the performance of the contract or any subcontract under this contract.

The contractor shall be responsible for all litigation, including the cost of litigation, brought against it, its employees or agents for alleged acts or omissions. The CO shall be notified in writing of all litigation pertaining to this contract and provided copies of any pleadings filed or said litigation within five working days of the filing. The contractor shall provide the CCM copies of all documents. The contractor shall cooperate with Government legal staff and/or the United States Attorney regarding any requests pertaining to federal or contractor litigation.

The contractor shall develop operational policies and procedures that follow the requirements contained in this SOW and to generally accepted correctional practice as defined by the COTR.

Except as otherwise provided for in this SOW, all federal offenders shall receive the same treatment and services.

a. Site. The contractor shall submit half size prints for site plans (Scale of original document: Minimum 1" = 100 feet) showing:

- The location of buildings, roads, fences, parking lots, walkways, and adjacent buildings, identifying their function.

b. Floor. The contractor shall submit half-size prints for architectural floor plans of each building (Scale of original document: 1/8" = 1 foot) showing:

- Layout, name and function of all rooms;
- Bed location, number of bed(s) in each room;
- Show unencumbered space area per occupant and indicate square footage;
- Location of fire suppression equipment;
- Total gross square footage of entire facility;
- Total gross square footage of each room;
- Area of safe refuge; and
- All building entries and exits.

The contractor shall also identify in the floor plans the exact location and dimensions of sleeping room(s), counseling room(s), lavatories, dining room(s), fire exits, and kitchen(s).

2. LOCATION. The facility will be located within one mile of public transportation, or the contractor will provide transportation for offenders to seek employment, work, and participate in program activities and necessary medical treatment i.e. physicals, at no cost to the offender. The contractor will ensure the proper insurance policy is in effect to cover the transportation, if applicable. If at anytime during the contact the CCM determines the public transportation system to be inadequate or ineffective, the contractor will provide offenders with transportation for work, program participation activities and necessary medical appointments at no cost to the offender. Additionally, staff will not use their personal automobile to transport offenders unless it is an emergency.

The contractor shall locate the facility in an area where the commuting time to the general area of work is ordinarily no more than one and one-half hours each way via public or contractor provided transportation.

The contractor shall arrange for transportation for indigent offenders seeking employment at no cost to the offender.

The facility shall not be part of a building which houses any other business, serves alcohol or provides some type of entertainment. The BOP strictly prohibits the use or possession of alcohol in the contract facility. The contractor shall ensure the building is appropriately zoned. The contractor shall maintain a permit from the local or state enforcement body or authorized representative having jurisdiction to operate. The contractor shall make these documents available on-site and to the BOP upon request.

3. PLANT REQUIREMENTS.

a. Air Circulation. The facility's sleeping rooms shall have adequate ventilation of outside or recirculated filtered air. The BOP authority having jurisdiction determines if adequate natural or mechanical ventilation is present.

b. Lighting. All personal living and sleeping areas in the facility shall have lighting of at least 20 foot candles. Lighting in washrooms and resident grooming areas shall have lighting of at least 30 foot candles. Illumination for walk-in refrigerator, freezer, closet and/or storage areas shall be at least 10 foot candles.

c. Space. A minimum of 25 continuous square feet of unencumbered space per occupant in the sleeping rooms shall be provided. The contractor shall ensure that the square footage area is not obstructed by any object, e.g., bed, furniture, or fixed building structure, and allows a reasonable person enough space to freely move about. The sleeping room area shall provide reasonable privacy to the offender; however, it shall be accessible to staff at all times. Areas such as day rooms, closets, bathrooms, TV rooms, dining rooms, or halls shall not be considered as sleeping rooms.

The contractor shall provide each offender with a bed and one closet or metal locker which provides for adequate space and is adjacent to or located in their sleeping area for the storage of personal items. Adequate space means an area which provides a reasonable person enough room to store personal clothes and hygiene articles. The contractor shall always have instant access to all closets and metal lockers for reasons of security and safety.

Co-correctional facilities shall provide for separate sleeping, bathing, and toilet areas by gender. The contractor shall provide reasonable control for appropriate separation of offenders by gender. If the facility is co-correctional, the

expected and should be able to meet this basic financial obligation while participating in the CCC program.

**NOTE: The CCM is authorized to modify the subsistence payment schedule and amount.**

11. EMPLOYMENT. The contractor shall develop and provide an employment program.

All offenders are expected to be employed 40 hours per week within the first 15 calendar days of their arrival at the facility. The contractor at all major use facilities shall employ an EPS. The EPS shall provide offenders with employment assistance in accordance with, but not limited to the following:

- Job/placement develop resources both in the CCC and in the community;

- Employment information assistance using computer-based technology and resources which include career assistance software and on-line resources, i.e., Internet, such as America's Job Bank (Note: The EPS shall have direct access to the Internet to meet this requirement. The EPS shall not permit any offender to directly access the Internet.) **Offenders are strictly prohibited from using the Internet.**

- Portfolio development, resume writing, proper dress and interview techniques training;

- Individual and group counseling, case management, and post-release follow-up relative to employment within the community, to include the area where the offender plans to live following release;

- Employment job fairs either on-site or in partnership with other organizations such as community colleges; and

- To maximize job retention, every effort should be made to match an offender's skill levels to an actual job placement. For example, an experienced heavy equipment operator may not be appropriately employed as a short order cook at minimum wage.

The EPS is encouraged to communicate with the BOP Inmate Placement Administrator, post contract award, to obtain pertinent and developing information in this area. The EPS may obtain the contact number to follow-up on this recommendation.

If a 40 hour employment is not obtained in 15 calendar days, the contractor shall fax the CCM with a biweekly status report of the efforts to assist the offender in obtaining employment.

Any proposed employment plan that is less than 40 hours requires the approval of the CCM and must be fully documented. An example of employment less than 40 hours is when an offender is unable to obtain full-time employment or the offender's employment is supplemented by volunteering in the community. The contractor shall require the offender to provide an itinerary and a point of contact for each job search appointment away from the facility.

The contractor shall maintain a log which indicates the offender's name, register number, date of arrival, and date of employment. If non-employment has been approved by the CCM, the log shall indicate this status in the date of the employment column.

a. Approval and Verification. Each offender's employment requires the contractor's written approval. The contractor will ensure thorough documentation that the offender's employer is aware of the offender's legal status prior to the first workday. When written correspondence is utilized, it shall be delivered by the contractor or via U.S. mail, not hand delivered by the offender. Any changes in an offender's employment shall require advance approval by the contractor.

For each job an offender acquires, the contractor shall verify employment by a random, on-site visit during the first seven calendar days, and document the visit in case notes to include date and the title of the person contacted. The contractor shall direct the employer to notify the contractor if the offender does not report to work as scheduled, is terminated or quits. A telephone number and contact person at the CCC shall be provided to the employer to report such incidents. Thereafter, at least weekly, the offender's employment supervisor shall be contacted by phone or site visits to substantiate attendance and discuss any problems which may have arisen. The contractor shall complete additional contacts as necessary. All contacts concerning an offender's employment shall be documented in the case notes. The CCM may modify this requirement.

All offenders (BOP and USPO cases) are subject to these requirements. The contractor shall report any deviation to the CCM.

# CHAPTER 20 - BOP Inspections

The objective of BOP inspections are to ensure that the contractor is in compliance with applicable laws, regulations, policies, contract requirements, and that fraud, waste, abuse, mismanagement, and illegal acts are prevented, detected, and reported. Once a contract has been awarded, inspections are conducted.

The contractor will receive feedback to inspections in the form of monitoring reports or direct correspondence. This feedback may assign findings which the contractor shall remedy. A finding is determined when evidence indicates that the contractor has failed to meet the performance requirements of the contract. The evidence that supports a finding will be factually sufficient to lead a knowledgeable, reasonable person who is not an expert in the program area to the same conclusion as the reviewer.

The BOP reserves the right to determine the resources, e.g., number and type of staff, number of working days necessary to perform all inspections and monitoring visits as defined in this chapter.

1. PREOCCUPANCY VISIT. After contract award, but before the CO issues the "notice to proceed" the BOP may conduct a preoccupancy visit at the facility. During this visit, the BOP will determine the contractor's ability to begin performance by inspecting, at a minimum, all emergency plans, life/safety and zoning issues for compliance to the SOW.

The contractor shall be in compliance with all aspects of the contract to include emergency plans, life/safety and zoning issues before the CO will issue the "notice to proceed."

a. Emergency Plans. After contract award, but before the CO issues the notice to proceed, the contractor shall submit to the CCM a complete written copy of the facility's emergency plans as required in the SOW.

b. Life/Safety Issues. After contract award, but before the CO issues the notice to proceed, the contractor shall be in compliance with all life safety issues as required by the SOW, unless otherwise indicated by the CCM.

c. Zoning. The contractor shall submit, upon request by the BOP, satisfactory proof that all zoning and local ordinance requirements have been met which are necessary for operation and applicable to any proposed performance site(s). Such proof shall

be in writing and shall consist of documentation from necessary local officials stating the contract may be performed at the proposed site(s) in accordance with the current zoning and other requirement of the local jurisdiction.

"Necessary local official" means an employee or elected person whose approval or concurrence as to the propriety of the use of the proposed site is required under any and all applicable laws of the state, county, city, town, village, or municipality in which the facility is located.

2. OTHER VISITS. The contractor shall except and accommodate visit(s) or inspection(s) by the BOP, or an investigative authority as indicated in the SOW, at anytime during the life of the contract. Other visits may occur for the purpose of training or to resolve general contract issues.

3. FULL MONITORING. A full monitoring is a thorough inspection and comprehensive review of all aspects of the contractor's operation and facility. The first full monitoring ordinarily occurs not less than 90 days from the issuance of the "notice to proceed." Ordinarily, but not limited to, the contractor is given notice to a full monitoring in advance. A full monitoring may take several days, and will produce a monitoring report.

A monitoring report contains all findings that are sufficient, competent and relevant. The report also outlines appropriate corrective action. The contractor shall respond within 30 days to the CCM when the contractor receives the report. The contractor's response shall address all findings, recommendation or comments and specify a plan of action to correct the findings. The contractor shall also indicate a date when each finding will be corrected. If constraints prevent the contractor from immediately correcting the finding, the contractor shall discuss, at length, in the response the constraints, reason for the constraints, and a realistic time frame for corrective action being completed. This in no way releases the contractor from performing the requirements of the contract.

If the CCM makes any recommendation to modify procedures and practices of the facility operations or physical structure, the contractor shall respond in writing indicating their intent to adapt or accept the recommendation or comment.

If the CCM directs the contractor to modify procedures and practices of the facility operation in accordance with the in requirements outlined in the SOW, the contractor shall respond in writing indicating their compliance.

4. INTERIM MONITORING. An interim monitoring is an unannounced on-site examination of findings noted in a prior monitoring. Ordinarily, the interim monitoring inspects, but is not limited to, those areas which are problematic. It is ordinarily brief and is not intended to be as lengthy and comprehensive as a full monitoring. Subsequent to an interim monitoring, the contractor will receive a letter acknowledging the interim monitoring from the CCM. The letter will also indicate all areas found non-

compliant. The contractor shall respond in accordance with the requirements in the full monitoring section of the SOW.

5. CONTRACTOR EVALUATION FORM (CEF). The CEF is an annual assessment conducted by the CCM The rating period represents 12 months of contract performance and ordinarily is conduct at the end of each performance period as identified on the Contract Award document.

A. Assessment. The CCM considers both positive and negative attributes. The CCM assigns a score (i.e., 1 = VERY DISSATISFIED; 2 = DISSATISFIED; 3 = SATISFIED; 4 = VERY SATISFIED; and 5 = EXTREMELY SATISFIED) to each of the following three assessment areas:

1) **Contract Compliance.** Rate compliance in areas such as staffing patterns, life safety, financial responsibility, discipline, food service and accountability. Consider the completeness and accuracy of the reports submitted by the contractor, such as invoices, urinalysis reports, incident reports, and volunteer participation reports.

2) **Customer Satisfaction.** Rate the overall quality of the programs that provide accountability, work, and other self-improvement opportunities for offenders. Consider the contractor's overall approach to communication and correctional management, and determine if is consistent with the mission of the BOP.

3) **Business Relationship.** Rate the flexibility, pro-activeness, professionalism, and cooperation as seen in the contractor's relationship with the BOP, U.S. Probation Office, U.S. Marshals Service, local law enforcement and community.

The CCM then calculates an assessment score using the following methodology:

- To calculate the adjectival rating, total the three assessment scores.
- Subtract (one time) three points for any withholding(s) taken during the rating period.
- If performance is over and above the minimum requirements of the SOW, add either one, two or three points. The number of points added is discretionary and must not exceed three.

- Divide by three.

- The result is the overall score and will fall within the numeric range associated with the adjectival rating.

B. Adjectival Ratings. An adjectival rating is determined after the assessment. The CCM assigns one of the following ratings based upon the overall score:

1) **Excellent - (4.33 and above).** During the rating period the contractor has performed without problems and has operated within the terms and conditions of the contract. The contractor has been extremely responsive to Bureau inquires. Improvements are not needed.

2) **Good - (3.66 - 4.3).** There are few, if any, problems with the contractor's performance. It is generally operating within the terms and conditions of the contract. Only minor improvements are needed.

3) **Fair - (2.55 - 3.6).** There are problems regarding the contractor's compliance with the requirements in the contract. However, the contractor is responsive to the Bureau and applies corrective measures within specified time frames. Several improvements are ongoing.

4) **Poor - (.1 - 2.5).** There is/are major problem(s) with the contractor's performance. The contractor must be notified in writing as to the problem areas and given a specific time frame in which to remedy the situation. The contractor is marginally responsive. The contractor is struggling to provide a safe and secure environment for offenders.

5) **Unsatisfactory - (0).** There is/are major problem(s) with the contractor's performance which the contractor has not remedied, cannot remedy, or refuses to remedy. The contractor fails to provide a safe and secure environment for offenders. The contractor is not performing in accordance with the terms and conditions of the contract. The contract should not continue.

C. Contractor's Review of the CEF. The contractor will have an opportunity to review and comment on each CEF prepared by the CCM. The contractor shall sign and date the CEP form acknowledging the contractor's receipt of the rating. Should the contractor disagree with the rating, the contractor may provide rebuttal comments on a separate letter. The contractor shall return the CEP form, with any comments, to the CCM within 30 calendar days after receipt of the form.

D. MCA's Certification of the CEP. Th MCA is responsible for the CEF program and must ensure that CCMs and T-DATCs complete CEF on time and accurately.

The MCA must review any comments submitted by the contractor and may adjust the adjectival rating up or down based on the contractor's comments. The MCA then signs the CEF, certifying that it represents the contractor's performance.

The MCA must forward the original CEF to the Community Corrections Contracting Section, Administration Division; a copy to Privatization and Special Projects Branch (PSPB), Community Corrections and Detention Division; and a copy to the contractor.

6. RESPONSIBILITIES OF THE CONTRACTOR. The contractor shall respond to all inspections, i.e., monitoring reports, CEFs and CCM inquiries within the appropriate time frame.

The contractor shall take appropriate actions to correct findings and improve operations, and ensure that adequate administrative controls and monitoring systems are in place to prevent the finding from recurring.

7. REPEAT FINDINGS. A repeat finding is a serious issue. Therefore, the authorized negotiator shall provide a separate response to the CCM, with a copy to the CO, specifically addressing the repeat finding. This is in addition to the facility director's response to the CCM. The authorized negotiator must describe the measures and internal controls to be implemented to ensure that the problem will not occur again, as well as explain why the problem was not corrected from the prior review. The authorized negotiator's response is due no later than five calendar days after receipt of the report.

**U.S. Department of Justice**

Federal Bureau of Prisons

*Community Corrections Office*

RECEIVED FEB 1 9 1998

*P.O. Box 171*
*U.S. Courthouse Room B-18*
*15 Lee Street*
*Montgomery, AL 36101*

February 10, 1998

Mr. David Lowry, Executive Director
Bannum, Incorporated
1301 Seminole Boulevard, Suite 126
Largo, FL 34640

Re: Bannum Place of Montgomery
Contract No. J200c-181

Dear Mr. Lowry:

This correspondence will serve to advise you of the results of the full monitoring conducted at Bannum Place of Montgomery, on February 2-4, 1998.

We were very pleased with the results of the monitoring and believe Bannum operates a very efficient program in Montgomery. Staff of the center work as a team and this is apparent after one spends only a short time in the facility. Key staff have excellent skills in their specific duties. Director, Mrs. Juliette Davis, is considered a master in the field of community corrections. She has put together a group of individuals who work well together. We are very pleased to have her in charge of this facility.

Please respond to the areas identified in the attached report within the time frames specified.

Sincerely,

Larry E. Spencer

Larry E. Spencer
Community Corrections Manager

BAN10812

Attachment

cc: Melvin Bailey, CCRA, Southeast Region, Atlanta, GA
Cheryl Dennings, MCA, Southeast Region, Atlanta, GA
Community Corrections & Detention Division, Washington, DC
Contracting Officer, Washington, DC
Juliette Davis, Director, Bannum Place, Montgomery, AL

BAN10813

**MONITORING REPORT**

**FOR**

**BANNUM PLACE OF MONTGOMERY**

**540 SAYRE STREET**

**MONTGOMERY, AL 36101**

**FEBRUARY 1998**

**SCOPE OF THE MONITORING**

This full monitoring visit was conducted to determine the level of compliance with the 1992 Statement of Work (SOW) and the terms of the contract with Bannum, Incorporated, which help makeup contract J200c181. Due to the nature of this visit, advance notice was given.

The monitoring was performed on February 2-4, 1998, and was conducted by Deborah Perry, CCCOS, and Larry Spencer, CCM. The monitoring commenced at approximately 2:20 p.m. on February 2, and concluded at 4:53 p.m. the first day. Subsequent dates and times of the monitoring were as follows: 2-3-98 @ 7:35 a.m. - 4:05 p.m.; 2-4-98 @ 3:57 p.m. - 5:32 p.m.; with closeout and departure on 2-4-98 @ 5:35 p.m.

The monitoring included interviews with staff as well as residents; examination of 25% of the resident files in addition to personnel, administrative, and program files. A walk-through inspection of the physical plant was conducted on the last day of the monitoring. A fire drill was conducted on 2-4-98 at 4:45 p.m. Impressions of this drill will be outlined later in this report. The security system and emergency lighting was tested.

Written correspondence from the Chief United States Probation Officer and telephone communication with the United States Marshal Service indicate satisfaction by both agencies insofar as their relationship with the center. We met with the food service vendor on the second day of the monitoring.

**BACKGROUND INFORMATION**

There have been no structural changes to the facility since the last monitoring which was conducted in January 1997.

The center population at the time of this monitoring was 17 "in house" residents (16 institutional transfers and one probation supervision case.) In addition, there was one individual who was on home confinement, supervised by center staff.

Staff at the time of this monitoring comprised the following employees: Juliette Davis, Director; Jennifer Means, Counselor; Jacquelyn Bell, Administrative Assistant; and (4) full-time Counselor Aides, Ronnie Turner; John Berry; Howard Austin; and Clifford Coleman; (2) part-time Counselor Aides, Bernice Lewis and Allison Billups. In addition, there were (2) Relief Counselor Aides, Louis Sneed and Yolanda Hopkins. The center contracts with one Substance Abuse Counselor, Laura Murdock.

There was one finding identified as a result of this monitoring. There are three commendations. Other miscellaneous items or topics of concern are found in the section entitled "Recommendations". All deviations from the terms of the contract have been discussed with appropriate staff. Supporting documentation for all findings are contained in the working papers and are maintained in the Community Corrections office.

**Finding #1 - Inmate Accountability**

Verification of a resident's presence at a pass site is not being maintained in resident files when an inmate is shopping, at movies, at church, barber shop, etc. This does not allow for an audit trail to determine if staff has verified a resident's location during his absence from the facility. (Chapter 10, Section J,1,b, SOW)

Corrective Action: The contractor is required to conform to all of the requirements identified or referenced as it relates to accountability issues in the SOW. Corrective action must be implemented within **15 days** of receipt of this report.

## RECOMMENDATIONS

Recommendation #1 - Payment of Court-ordered financial obligations and assessment of financial goals and follow-up during the period of CCC Placement should be incorporated into the program plan.

Recommendation #2 - Medications taken by residents should be listed in the Comments section on the chain of custody form when urinalysis testing is being conducted.

Recommendation #3 - Transportation has become an issue since the change in the public transportation system within the City of Montgomery. The transportation needs of the residents need to be addressed by Bannum immediately, before the problem becomes severe.

## COMMENDATIONS

Commendation #1 - This facility has incorporated a Sanitation Program and created a roster of sanitation duties and routines for residents, whereby the facility is kept in an exceptionally clean state at all times when visitors might enter the facility. This system allows for all inmates to perform personal hygiene functions and assigned inmates to perform cleaning duties prior to leaving the facility for employment. It also allows staff to know immediately who failed to perform their assigned duties and correct the situation.

Commendation #2 - The fire drill conducted on the last day of the monitoring was conducted in an extremely proficient manner. It was obvious that staff, as well as inmates, were well prepared and knowledgeable in the proper procedures in the event an evacuation of the building was necessary.

Commendation #3 - The Counselor has systems in place to monitor her caseload in a very effective manner. Her organization and case management skills were apparent in the orderly and proper arrangement of each file reviewed according to the standard file organization checklist used in the facility. Her case notes were timely and meaningful with respect to program progress of each resident. She has a very good working knowledge of her caseload

and uses her case management skills in a very effective manner with the resident population. Terminal reports reflect a system of good record keeping and follow up by the Counselor as a resident moves from an initial intake to release from the program.

**COMMENTS**

It was a pleasure to visit a program which operates as well as Bannum Place of Montgomery. It is apparent that staff are working together as a team and reaping the benefits of teamwork with respect to monitoring resident activities. The timeliness of job site; home confinement; and pass residence visits continues to be clearly evident from the files reviewed during this audit. Staff responsible for these areas should be commended for their efforts in this regard.

Sanitation during this monitoring was found to be impeccable, once again.

In summary, Bannum Place of Montgomery operates a very efficient program and we are extremely pleased with the results of this full monitoring.

Please respond to the finding noted above within the time frames specified.

| | |
|---|---|
| Prepared by: | Reviewed by: |
| Deborah Perry | Larry E. Spencer |
| Deborah Perry, CCCOS | Larry E. Spencer, CCM |
| Date: 2-10-98 | Date: 2-10-98 |

**U.S. Department of Justice**

Federal Bureau of Prisons

*Washington, DC 20534*

RECEIVED MAR 1 3 1998

March 10, 1998

Mr. David A. Lowry, Executive Director
Bannum, Inc.
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770

**Re: Discussions #1**
**Request For Proposals (RFP) 200-0422-SE, Montgomery, AL area**

Dear Mr. Lowry:

This letter is to advise you that Bannum, Inc. is considered to be within the competitive range for discussions under Solicitation RFP 200-0422-SE, for residential Community Corrections Center (CCC) services in the Montgomery, Alabama area.

Your proposal has been evaluated by a Bureau of Prisons (BOP) Technical Panel to determine whether any weaknesses, deficiencies, and/or excesses exist, based on the requirements of the Statement of Work (SOW), Part I, Section C of the RFP. To provide for meaningful discussions, each offeror must be informed of the weaknesses, deficiencies, and/or excesses in their proposal.

Your proposal has weaknesses because it does not fully comply with the SOW of the RFP. In order to bring your proposal up to an acceptable level, the following proposal points require discussion.

**Technical (Reports/Policy/Procedures):**

1. Bannum proposed catered food services, but failed to provide documentation in accordance with Chapter 13 of the SOW. **SOW, Chapter 13, Section A-3(b), A-3(c).** This is a weakness.

2. The letter Bannum provided for emergency medical services is not current for this solicitation. **SOW, Chapter 13, Section B-3.** This is a weakness.

BAN10309

**Technical (Facility):**

Pending the Site Inspection Team's visit to Bannum's facility, the Contracting Officer has no weaknesses, deficiencies, and/or excesses to discuss at this time.

**Technical (Management):**

1. Bannum's second Counselor position (identified as #3 in the staff work schedule) is not a full-time position. The Counselor position is "Key Personnel," so any and all Counselor positions must be full-time. **SOW, Chapter 2, Section K.** This is a weakness.

**Business Proposal:**

1. The Government considers your prices too high, based on (a) its Government Cost Estimate, (b) what Bannum is currently being paid for similar services under Contract J200c-181 in Montgomery, and (c) the fact that Bannum did not cite any reason(s) for the high prices in its proposal.

2. Bannum must correct its business representation to accurately reflect that it is a small business concern, under Section K.9, 52.219-1, Small Business Program Representations, (b)(1). (Bannum identified itself as "not a small business concern.") Mark the box corresponding to "is," identifying a small business concern.

As a result of this discussion, please submit any price, technical, or other revisions to your proposal.

Please fax your Discussions response to this office at (202) 307-2780 by March 13, 1998, 2:00PM Local Time.

Please submit an original and four (4) copies of your response to this office at Procurement and Property Branch, Community Corrections Contracting, 320 First Street, N.W., Room 5006, Washington, D.C. 20534, by March 20, 1998, 2:00PM Local Time.

Sincerely,

Leah Wilson
Contracting Officer
Community Corrections Contracting

BAN10310

K.8 **52.215-6 PLACE OF PERFORMANCE (OCT 1997)**

(a) The offeror or respondent, in the performance of any contract resulting from this solicitation, [ ] intends, [ ] does not intend [check applicable block] to use one or more plants or facilities located at a different address from the address of the offeror or respondent as indicated in this proposal or response to request for information.

(b) If the offeror or respondent checks "intends" in paragraph (a) of this provision, it shall insert in the following spaces the required information:

| Place of Performance (Street Address, City, State, County, Zip Code) | Name and Address of Owner and Operator of the Plant or Facility if Other than Offeror or Respondent |
|---|---|
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |
| ______________________ | ______________________ |

K.9 **52.219-1 SMALL BUSINESS PROGRAM REPRESENTATIONS (JAN 1997)**

(a) (1) The standard industrial classification (SIC) code for this acquisition is 8361.

(2) The small business size standard is no more than $5 million average annual receipts for an offeror's preceeding 3 fiscal years.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations. (1) The offeror represents as part of its offer that it [ ] is, [ ] is not a small business concern.

(2) (Complete only if offeror represented itself as a small business concern in block (b)(1) of this section.) The offeror represents as part of its offer that it [ ] is, [ ] is not a small disadvantaged business concern.

(3) (Complete only if offeror represented itself as a small business concern in block (b)(1) of this section.) The offeror represents as part of its offer that it [ ] is, [ ] is not a women-owned small business concern.

(c) Definitions. "Joint venture," for purposes of a small disadvantaged business (SDB) set-aside or price evaluation

Bannum, Inc.
5904 MacCorkle Avenue, SW
St. Albans, WV 25177

Cathy Bellew
Operations Manager
Office: (304) 768-6625
Fax: (304) 768-4012

March 18, 1998

Mr. Larry E. Spencer,
Community Corrections Manager
U.S. Department of Justice
Federal Bureau of Prisons
P.O. BOX 171
U.S Courthouse Room B-18
15 Lee Street
Montgomery, AL 36101

Mr. Spencer:

As per your request I am relating the results of my recent communications with the Public Bus System, DART, for our Bannum Place of Montgomery facility.

I spoke with DART administrator, Sue Pari, regarding Bannum's need for bus service. Ms. Pari has supplied the attached DART operations manual . According to the attached DART operations manual, DART currently offers public transportation for Bannum residents which adhere to SOW requirements.

Conflicts over resident transportation needs in the evening sometime develop over late appointment schedules with CAPS, the transitional service provider. Bannum has offered to provide CAPS with free, private counseling space at our Montgomery facility to alleviate resident transportation problems, but Bannum's offer was declined. Bannum has also attempted to schedule residents in transitional services during times which do not conflict with bus and work schedules, but CAPS has declined to work around resident bus and work schedules.

Residents who rely on public transportation to work, should schedule ahead with DART to make sure transportation is available.

Should you have questions regarding the above response, please contact me.

Sincerely,

Cathy Bellew, Operations Manger

BAN10897

RECEIVED APR 1 5 1998

**U.S. Department of Justice**

Federal Bureau of Prisons

*Washington, DC 20534*

April 10, 1998

Mr. David A. Lowry, Executive Director
Bannum, Inc.
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770

**Re: Discussions #2**
**Request For Proposals (RFP) 200-0422-SE, Montgomery, AL area**

Dear Mr. Lowry:

This letter acknowledges receipt of your response to Discussions #1 for RFP 200-0422-SE, for residential Community Corrections Center (CCC) services in the Montgomery, Alabama area.

A review of your response has been completed and the following issues are in need of further discussion.

**Technical (Reports/Policy/Procedures):**

1. The Liz Home Cooking Food Permit and Business License expired on September 30, 1997 and December 31, 1997, respectively. These are weaknesses.

**Technical (Facility):**

The Preliminary Site Inspection was conducted on March 19. The Inspection Team identified, but is not limited to, the following weaknesses:

1. The exit sign located by the rear exit on the second floor must be connected to a secondary power source. Emergency lights and exit signs must be illuminated in both normal and emergency modes. This is a weakness.

2. Bannum must ensure that the water temperature is thermostatically controlled at 120 degrees Fahrenheit. This is a weakness.

3. Bannum must provide documentation from a certified entity that the smoke detectors have been tested. This is a weakness.

4. Bannum must provide documentation from a certified entity (HVAC professional, engineer, etc.), either in the form of a letter or