in the appropriate box.

**Recommendation # 3** - Case Management staff need to ensure the residents are provided the opportunity to review, sign, and date the bi-weekly Progress Review Reports at the time of the meeting with their case manager. Additionally, staff should ensure the reports are being filed in a timely manner.

## COMMENDATIONS

1. The food service operation was found to be in compliance with contract requirements. The meals followed the posted menu and appeared to provide ample portions.

2. Although the building which houses the CCC is old, and in need of repair, the resident rooms were orderly and sanitation was excellent.

3. Staff were very knowledgeable about their duties, security, and programs. The staff were professional, helpful, and displayed a team spirit attitude.

Prepared by: Helen L. Ramsdell
Helen L. Ramsdell
Community Corrections Trainee

Approved by : D. Zickefoose
Donna Zickefoose
Management Center Administrator

**U.S. Department of Justice**

Federal Bureau of Prisons

*Community Corrections Management Center*

*715 McDonough Boulevard S.E.*
*Atlanta, Georgia 30315*

June 28, 1999

Mr. David Lowry, Executive Director
Bannum, Incorporated
1301 Seminole Boulevard
Suite 126
Largo, Florida 33770

Re: Contract Monitoring Closure Letter
Contract #J200c-397
Montgomery, Alabama (4XA)

Dear Mr. Lowry:

I am in receipt of Ms. Cathy Bellew's response to the interim monitoring conducted at Bannum Place during March 1999. Although the transportation issue has not been resolved, the problems regarding resident transportation are currently being discussed by the Contractor, Montgomery CCM Office, and the Central Office Contracting Officer.

As a resolution to is expected in the near further, I accept Ms. Bellew's response to the findings. Please consider the March 1999, monitoring closed. If the transportation issue is not resolved, it will be re-addressed in the future.

Sincerely,

D. Zickefoose

Donna Zickefoose
Community Corrections Manager

cc: Cheryl Dennings, CCRA/SERO
Contracting Officer, Community Corrections Branch/CO
Contracting File/Montgomery CCO

BAN10969

NOV-29-99 MON 11:21 ATL CCM OFFICE FAX NO. 4046248145 P. 01/02
SEP-10-99 FRI 10:22 AM OFFICE FAX NO. 678 1399 P. 03
09/10/1999 10:36 BANNUM PAGE 02

FAX TRANSMITTAL # of pages ▸ 2
To Anthony Bigesby From D Zucke Poo CD
Dept./Agency Contracting Phone # MCA Atlanta
Fax # Fax #
NSN 7540-01-317-7368 5099-101 GENERAL SERVICES ADMINISTRATION

Draft

September 8, 1999

Dear Ms. Dennings:

In response to your request, we have obtained costs for the provision of transportation services in excess of contract terms at our Tupelo and Montgomery programs. Accordingly, we offer the following services at the proposed rates as more fully discussed herein below.

Montgomery, AL

Yellow Cab Company of Montgomery, AL will provide transportation to certain residents between the hours of 6 a.m. and 8 a.m. and 5 p.m. and 9 p.m., on an as needed basis, Monday through Friday. This transportation service is intended to supplement the existing public transportation system, not replace it. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles or use of the existing public transportation system, and will not be provided beyond the city limits.

Transportation will be provided for transporting employed residents to and from their work site, residents seeking employment to specific interviews and residents participating in Transitional Services Counseling and for no other purpose. The cost of this service to the BOP is $5,500 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event Montgomery Cab Company discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Tupelo, MS.

Tupelo Cab Company of Tupelo, MS. will provide transportation to certain residents between the hours of 5 a.m. and 8 a.m. and 3 p.m. and 6 p.m., on an as needed basis, Monday through Friday. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles, and will not be provided beyond the city limits.

Transportation will be provided for transporting employed residents to and from their work site and residents seeking employment to specific interviews, and for no other purpose. The cost of this service to the BOP is $4,000 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event Tupelo Cab Company discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Should a problem arise with the provider of services, Bannum will use its best efforts to resolve the problem, change providers or take other appropriate action which the BOP deems necessary. However, Bannum can not be held responsible for lapses in service, quality of service, or other matters beyond its control.

Sincerely,

David A. Lowry

Draft

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

November 29, 1999

Anthony Bigsby
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Contract #J200c-0397
Modification No. Three

Contract #J200c-0306
Modification No. Seven

Dear Mr. Bigsby:

Prior to September 8, 1999, the CCRA for the Southeast Region requested that Bannum submit to her a proposal for the provision of transportation services, in excess of contract terms, for Bannum's CCC programs in Montgomery, AL and Tupelo, MS. Then on September 8, 1999, Bannum submitted the attached proposal to the CCRA as she had requested and which discussed price, terms and other conditions. Having no further discussion, Bannum received the attached modifications on November 24, 1999, one for Montgomery, AL and one for Tupelo, MS. Believing that our proposal letter of September 8, 1999 had been accepted, Bannum signed both modifications.

However, this morning I was informed by the CCRA's office that our September 8, 1999 proposal letter was not forwarded to the Contracting Officer. Obviously, there has been a "mistake between the parties" and therefore, Bannum hereby rescinds its agreement to the two modifications discussed herein above. However, in an effort to meet the needs of the BOP, Bannum would like the opportunity for further discussions and we await your guidance.

Sincerely,

David A. Lowry

U. S. Department of Justice

Federal Bureau of Prisons

*Community Corrections Office*

*P.O. Box 171*
*U.S. Courthouse, Room B-18*
*15 Lee Street*
*Montgomery, AL 36101*

September 23, 1999

David Lowery
Executive Director
Bannum Incorporated
1301 Seminole Boulevard
Suite 126
Largo, Florida 33770

**RE: Close out of Full Monitoring**
**conduced January 6-11, 1999**
**Contract Number J200c-397 (CMY 4XA)**

Dear Mr. Lowery:

The purpose of this correspondence is to close out the Full Monitoring conducted at your facility on the above referenced dates.

After numerous discussions regarding the transportation issue, we have decided to have the Contracting Officer negotiate this concern with you. For this reason, you may consider this monitoring officially closed. We appreciate all your efforts to provide quality services and programs to the residents.

We look forward to our next visit to your facility. Should you have any questions and/or concerns, please contact us.

Sincerely,

Larry E. Spencer

Larry E. Spencer
Community Corrections Manager

cc: Cheryl Dennings, Community Corrections Administrator
Donna Zickefoose, Management Center Administrator
Leah Wilson, Contracting Officer
Juliette Davis, Director
Robert P. Longshore, Chief United States Probation Officer
Community Corrections Manager Contract File

BAN10970

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

November 29, 1999

Anthony Bigsby
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Contract #J200c-0397
Modification No. Three

Contract #J200c-0306
Modification No. Seven

Dear Mr. Bigsby:

Prior to September 8, 1999, the CCRA for the Southeast Region requested that Bannum submit to her a proposal for the provision of transportation services, in excess of contract terms, for Bannum's CCC programs in Montgomery, AL and Tupelo, MS. Then on September 8, 1999, Bannum submitted the attached proposal to the CCRA as she had requested and which discussed price, terms and other conditions. Having no further discussion, Bannum received the attached modifications on November 24, 1999, one for Montgomery, AL and one for Tupelo, MS. Believing that our proposal letter of September 8, 1999 had been accepted, Bannum signed both modifications.

However, this morning I was informed by the CCRA's office that our September 8, 1999 proposal letter was not forwarded to the Contracting Officer. Obviously, there has been a "mistake between the parties" and therefore, Bannum hereby rescinds its agreement to the two modifications discussed herein above. However, in an effort to meet the needs of the BOP, Bannum would like the opportunity for further discussions and we await your guidance.

Sincerely,

David A. Lowry

BAN04791

U.S. Departme ›f Justice

Federal Bureau of Prisons

*Washington, DC 20534*
December 13, 1999

Mr. David A. Lowry, Executive Director
Bannum, Inc.
1301 Seminole Boulevard, suite 126
Largo, Florida 33770

Re: J200c-397

Dear Mr. Lowry:

Enclosed is a signed modification number 3 to include estimated transportation cost to be provided to and from the surrounding communities of Montgomery, Alabama.

Should you have any questions, please call me at (202) 307-0093.

Sincerely,

Anthony H. Bigesby
Contracting Officer

12/20/99 MON 13:06 [TX/RX NO 8465]

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE: J200c-0397
PAGE 1 OF PAGES 2

| 2. AMENDMENT/MODIFICATION NO. | 3. EFF. DATE | 4. REQUISITION/PURCHASE REQ. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| Modification Number Three | 12/01/1999 | 104/Spencer | 4XA |

6. ISSUED BY CODE
U.S. Department of Justice
Federal Bureau of Prisons
Community Corrections Contracting
320 First Street, N.W. (5006)
Washington, D.C. 20534

7. ADMINISTERED BY (If other than Item 6) CODE
Anthony H. Bigesby
Contracting Officer
(202) 307-0093

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and Zip Code)
Bannum, Inc.
1301 Seminole Boulevard, Suite 126
Largo, Florida 33770
Attn: Mr. David A. Lowry, Exec. Dir
(727) 588-2594

CODE FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
J200c-0397

10B. DATED (SEE ITEM 13) 07/01/1998

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
FP-03-00-09-T1-414-2506-N-08-0397 Funds will be obligated by each delivery order.

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (Such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) FAR 43.103(a) |

E. IMPORTANT: Contractor ☐ is not ☒ is required to sign this document and return 1 copies to issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Contract J200c-397 is hereby modified to include an estimated annual transportation cost provided by Bannum, Inc. to and from the surrounding communities of Montgomery, Alabama.

| | |
|---|---|
| Original Estimated Contract Amount: | $1,014,481.00 |
| Estimated Changes to Date: | .00 |
| Estimated Amount of this Change: | 45,000.00 |
| New Estimated Total Contract Amount: | $1,059,481.00 |

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
DAVID LOWRY Ex Dir

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
Anthony H. Bigesby
Contracting Officer

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED 11-24-99

16B. UNITED STATES OF AMERICA
BY Anthony H. Bigesby
(Signature of Contracting Officer)

16C. DATE SIGNED 11-26-99

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA FAR (48 CFR) 53.243

12/20/99 MON 13:06 [TX/RX NO 8465]

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT - CONTINUATION | | | 1. CONTRACT ID CODE J200c-0397 |
|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO. Modification Number Three | 3. EFF. DATE. 12/01/1999 | 4. REQUISITION/PURCHASE REQ. NO. 104/Spencer | PAGE 2 OF PAGES 2 |

4. DESCRIPTION OF AMENDMENT/MODIFICATION - Continuation

CONTRACTOR'S STATEMENT OF RELEASE

In consideration of the modification(s) agreed to herein as complete equitable adjustments for the Contractor to add estimated transportation cost, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustment attributable to such facts or circumstances giving rise to the estimated transportation cost.

*** ALL OTHER TERMS AND CONDITIONS SHALL REMAIN THE SAME ***

STANDARD FORM 30 (REV. 10-83)

12/20/99 MON 13:06 [TX/RX NO 8465]

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

December 20, 1999

Anthony Bigesby
Federal Bureau of Prisons
CCC Contracting
320 First Street N.W.
Washington, D.C. 20534

By Fax

Re: Contract #J200c-0397
Modification No. Three

Contract #J200c-0306
Modification No. Seven

Dear Mr. Bigesby:

On December 17, 1999, our office received the above referenced modifications which were signed by you on November 26, 1999 (see attached). However, on November 29, 1999 , Bannum rescinded those modifications due to a "mistake" between the parties (see attached) and I subsequently discussed the "mistake" with you by telephone.

Accordingly, I will telephone you today for more discussion of this matter.

Sincerely,

David A. Lowry

BAN04792

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

January 7, 2000

Anthony Bigesby
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

Dear Mr. Bigesby:

In accordance with our telephone discussion of January 4, 2000 and in response to your request, attached hereto are costs associated with Bannum's proposal for the provision of transportation services in excess of contract terms at our Tupelo and Montgomery programs as more fully discussed herein below.

Montgomery, AL

Yellow Cab of Montgomery will provide transportation to certain residents between the hours of 6 a.m. and 8 a.m. and 5 p.m. and 9 p.m. on an as needed basis, Monday through Friday. This transportation service is intended to supplement the existing public transportation system, not replace it. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles or use of the existing public transportation system, and will not be provided beyond the city limits.

Additionally, and for the draft letter of September 8, 1999 which was addressed to Ms. Dennings, I had computed the monthly cost based on an anticipated $30 per hour agreement with the Yellow Cab Co. of Montgomery. We had received a letter indicating a cost of $35 per hour as evidenced by the attached letter and had negotiated that cost to $33 per hour at the time of the September letter. I anticipated negotiating further reductions but at this time have been unable to do so.

Based on the $33 per hour rate for 6 hours per day, 5 days per week, 52 weeks per year, the total cost is $51,480. The umbrella insurance policy cost is $3,426 divided equally between the two programs provides a cost of $1,713. Administrative and overhead costs to include management, billing, collection

accounts payable, check writing, taxes, clerical, telephone, copying, etc. is anticipated to equal or exceed $13,000 annually. In addition, a reasonable profit of approximately $7,000 per year provides for a total cost to the government of $73,000 annually.

Accordingly, transportation will be provided for transporting employed residents to and from their work site, residents seeking employment to specific interviews and residents participating in Transitional Services Counseling and for no other purpose. The cost of this service to the BOP is $6000 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event Montgomery Cab Company discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event that Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Tupelo, MS.

Tupelo Cab Company of Tupelo, MS will provide transportation to certain residents between the hours of 5 a.m. and 8 a.m. and 3 p.m. and 6 p.m., on an as needed basis, Monday through Friday. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles, and will not be provided beyond the city limits.

Based on the $21 per hour rate for 6 hours per day, 5 days per week, 52 weeks per year, the total cost is $32,760. The umbrella insurance policy cost is $3,426 divided equally between the two programs provides a cost of $1,713. Administrative and overhead costs to include management, billing, collection accounts payable, check writing, taxes, clerical, telephone, copying, etc. is anticipated to equal or exceed $8,6000 annually. In addition, a reasonable profit of approximately $4,500 per year provides for a total cost to the government of $48,000 annually.

Accordingly, transportation will be provided for transporting employed residents to and from their work site, residents seeking employment to specific interviews and for no other purpose. The cost of this service to the BOP is $4,000 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event Tupelo Cab Company discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event that Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Should a problem arise with the provider of services, Bannum will use its best efforts to resolve the problem, change providers or take other appropriate action which the BOP deems necessary. However, Bannum can not be held responsible for lapses in service, quality of service, or other matters beyond its control.

Sincerely,

David A. Lowry

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

January 11, 2000

Ray Toston
2350 Fairlane drive, Suite 110
P. O. Box 230727
Montgomery, AL 36123-0727

Dear Mr. Toston:

Please be advised that Bannum, Inc. is currently negotiating with the contracting office for the provision of transportation services at our programs in Tupelo, MS and Montgomery, AL.

If I can be of any further assistance, please let me know.

Sincerely,

David A. Lowry

BAN04708

**U.S. Department of Justice**

Federal Bureau of Prisons

*COMMUNITY CORRECTIONS OFFICE*

*2350 Fairlane Drive, Suite 110*
*P.O. Box 230727*
*Montgomery, AL 36123-0727*

February 2, 2000

David Lowry
Executive Director
Bannum Incorporated
1301 Seminole Boulevard
Largo, Florida 33770

**RE: Full Monitoring (CMY 4AX)**
**(January 3-5, 2000)**
**Contract Number J200c-397**

Dear Mr. Lowry:

The purpose of this letter is to convey the findings of the Full Monitoring conducted at your facility on the above referenced dates. All findings are included in the attached Monitoring Report.

As noted in the report, there are some findings which will require corrective action. Additionally, we request that you respond to all recommendations in the report.

The overall operation of your facility was found to be satisfactory. The director is to be commended for her leadership, motivation and initiative.

Please thank your staff for the warm hospitality and cooperation displayed throughout the monitoring.

Please forward your response to this report to me no later than 30 days from receipt of this letter. If you have any questions and/or concerns regarding the monitoring, please feel free to contact me.

Sincerely,

Helen Ramsdell
Community Corrections Manager acting

cc: Cheryl Dennings, Community Corrections Administrator
Donna Zickefoose, Management Center Administrator
Anthony H. Bigesby, Contracting Officer, Washington, D.C.
Robert P. Longshore, Chief United States Probation Officer
Juliette Davis, Program Director
Community Corrections Manager Contract File

BAN10834

**FULL MONITORING REPORT FOR**
**BANNUM INCORPORATED**
**BANNUM PLACE OF MONTGOMERY**
**540 SAYRE STREET**
**MONTGOMERY, ALABAMA 36104**
**CONTRACT NUMBER J200c-397**

**SCOPE OF THE FULL MONITORING**

A Full Monitoring of the facility was conducted January 3-5, 2000, to determine compliance with the terms of the contract between Bannum Incorporated and the Bureau of Prisons. The following are the specific dates and times of the monitoring: January 3, 2000, from 9:15 a.m. to 11:15 a.m.; January 4, 2000, from 8:50 a.m. to 9:45 p.m.; and January 5, 2000, from 9:00 a.m. to 6:30 p.m. The previous Interim Monitoring conducted June 22-23, 1999 identified the following findings: Numerous repairs to the facility needed to be made; no inventory cards or method of accountability for the use of hazardous chemicals, and failure to have physical examinations completed in accordance with the Statement of Work. All previous findings were corrected.

**BACKGROUND INFORMATION**

Bannum Incorporated is the sole provider of community-based services in the Montgomery, Alabama area. The facility is a multistory building consisting of a basement and two stories, which was built in the late 19th century. There is an automatic sprinkler system connected to alert the local fire department of a fire. The facility is located in a residential area of the city near downtown.

The facility serves as a pre-release center for male and female offenders. Client types include institution transfers, direct court commitments, supervised release violators, probation cases and pre-trial cases. All offenders should be assisted in securing viable employment, made aware of available community services, assisted with the establishment of personal bank accounts, and the reestablishment of family and community ties.

The CCC contract was awarded to Bannum Incorporated on July 1, 1998. Performance of the contract begin on October 1, 1998. The quota is 26. CCC utilization over past 12 months has been 9,886 regular inmate-days and 764 home confinement inmate-days. This equates to 27 residents per month in the facility with an additional 2 residents assigned to the home confinement program.

BAN10835

On the first day of the monitoring, there were 25 Bureau residents in the facility and 2 on home confinement. On the last day of the monitoring, there were 26 Bureau residents in the facility and 2 assigned to the home confinement program. There were 0 Pretrial residents in the facility.

**REPEAT FINDINGS AND CORRECTIVE ACTION REQUIRED**

There were no Repeat Findings noted during this monitoring.

**SIGNIFICANT FINDINGS AND CORRECTIVE ACTION REQUIRED**

**SIGNIFICANT FINDING - FACILITY:**
*The Statement of Work, Chapter 3, Page 16-C, states in part "The contractor shall arrange for transportation for indigent residents while seeking employment, at no cost to the resident."*

Since the inception of the contract, Bannum has not provided residents seeking employment with any type of transportation. All transportation costs have been at the residents' own expense.

**Corrective Action:**

**Upon receipt of this monitoring report,** the contractor shall provide all residents seeking employment with **free** transportation. This could be accomplished by purchasing bus passes from Dart, and issuing them to residents until they become employed. After they become employed, residents should be responsible for the cost of their transportation.

**FINDINGS AND CORRECTIVE ACTION REQUIRED**

**FINDING #1 PERSONNEL**
*Chapter 2, Page 12, of the Statement of Work states "The staffing pattern shall also include an Employment Placement Specialist which shall be primarily focused on the employment aspect of CCC programming. This position shall be responsible for developing employment resources for the resident population as well as conducting employment readiness counseling and follow-up monitoring."*

During interviews with the residents, it was learned that they are not assisted with finding employment. They basically find their own jobs with very little or no assistance from staff.

Additionally, Bannum of Montgomery does not have a full-time Employment Specialist, as identified in the contractor's Technical Proposal. Ms. Bell, the Executive Assistant to the Director, has been assigned a dual role (Executive Assistant to the Director and Employment Specialist). Ms. Bell spends her time primarily with the collection of subsistence from residents.

**Corrective Action:**

**By February 20, 2000,** the contractor shall comply with their Technical Proposal by providing a full-time Employment Specialist. This individual shall focus primarily on assisting residents with finding viable employment, preparing residents for the challenges they will face in the job market, and developing employment resources in the community.

**FINDING #2 - FACILITY**

*Chapter 3, Page 16-A, of the Statement of Work, states "The facility shall be located within one mile of public transportation, or the contractor shall provide for transportation of residents for employment or program participation activities at no cost to the resident."*

The facility is not located within one mile of public transportation. Residents have to call a public transportation system known as "Dart," and make an appointment to be picked up from the nearest Dart pick-up location. Sometimes, even after arrangements have been made by the residents for pick-up, Dart fails to arrive to transport the residents to their designation. Furthermore, an agreement with Bannum and the contractor was reached on November 26, 1999, for Bannum to start providing transportation to the resident population. However, to date, Bannum has not provided the service. The CCM office received a letter from Executive Director David Lowry, stating that the transportation issue has been referred back to the Contracting Officer for negotiation. Upon checking with the Contracting officer, it was learned that Bannum should currently be providing residents with transportation in accordance with the recent agreement.

**Corrective Action:**

**By February 20, 2000,** provide residents with transportation in accordance with the recent negotiated agreement. This should include transportation to and from work, as well as to program participation activities.

BAN10837

**With the submission of the response to this monitoring report, please provide a written summary of the type of transportation you plan to provide to the residents, i.e., purchase a van, pay taxi fares. Also, indicated the hours of operation in which the transportation will be provided.**

**FINDING #3 - LIFE/SAFETY**

*The Statement of Work, Chapter 4, Page 19-A, Number 1, states "All NFPA 101, Life Safety Code requirements are considered mandatory. The BOP reserves the right to interpret and enforce all requirements of the version of NFPA 101, Life Safety Code under which the contract was awarded."*

During the monitoring, the following life safety deficiencies were noted:

1) The Ground Fault Circuit Interrupter on the electrical outlet in the small upstairs bathroom was not working properly.

2) An extension was in use in the Women's Dormitory.

3) There were openings/gaps around an electrical outlet in monitor's office.

4) A wash basin was hanging loose from the wall in the large upstairs bathroom.

5) The disabled shower located on the first floor was leaking water to the basement.

**Corrective Action:**

1) Repair the Ground Fault Circuit Interrupter on the electrical outlet in the small upstairs bathroom.

2) Discontinue the use of extension cords.

3) Fill-in the openings/gaps around an electrical outlet in the monitor's office with an approved filling.

4) Reconnect the wash basin to the wall in the large upstairs bathroom.

5) Prevent the water from leaking to the basement on the disabled shower.

**FINDING #4 - ELECTRICAL SAFETY**

Chapter 6, Page 25-E states in part "Floor space heaters are considered unsafe from the standpoint of fire safety and shall not be permitted."

During the monitoring, floor space heaters were found in the monitor's office, reception area, counselor's office and downstairs storage room.

**Corrective Action:**

Discontinue the use and storage of space heaters in the facility, **effective immediately.**

**FINDING #5 - SERVICES**

*The Statement of Work, Chapter 13, Page 65-a, states "Menus shall be prepared and available to the residents. Meals shall provide 2,300 to 3,400 kcal/per day for male residents and 1,900 to 2,700 kcal/per day for female residents. Servings shall be divided among the food groups per Attachment V."*

During the monitoring, it was discovered that the approved food menu does not specify the kcal per day for males or females.

**Corrective Action:**

**By February 25, 2000,** the contractor shall provide the kcal/per day for all meals served at the facility. The analysis should be completed by a registered dietitian or nutritionist. A copy of the new menu and kcal per day analysis shall be submitted with the response to the monitoring report.

**FINDING #6 - SERVICES**

*The Statement of Work, Chapter 13, Page 68-B, Number 3 states "Written arrangements shall be made with a licensed general hospital, private licensed physician or clinic to ensure emergency medical service is available twenty-four (24) hours a day."*

The contractor's written medical agreement is with East Montgomery Medical Center. However, East Montgomery was bought out by Baptist Health Center in June 1999. This makes the current agreement invalid.

**Corrective Action:**

**By February 25, 2000,** the contractor shall obtain a medical agreement with Baptist Health Center or an alternative provider. The agreement shall provide 24 hours a day medical coverage to the resident population.

## RECOMMENDATIONS

**RECOMMENDATION #1**
Staff should write the date on the containers and/or sacks of all meals delivered to the facility by the catering service. This would aid in ensuring spoil food is not consumed by the residents.

**RECOMMENDATION #2**
Ensure Counselors work at least one day per week on weekends and holidays.

**RECOMMENDATION #3**
Male staff should always knock on the door and await a response prior to entering the female dormitory. The same should apply when female staff want to enter the male dormitory. This enhances the professionalism of staff as well as the organization.

**RECOMMENDATION #4**
Purchase a cold water fountain for the facility, or purchase an automatic ice machine.

**RECOMMENDATION #5**
Since the microwave is kept downstairs where the male population eats, purchase an additional microwave to be placed upstairs in the area where the females eat. During the monitoring, several females complained that staff do not always have time to let them downstairs to warm their food.

## COMMENDATIONS

1) Overall sanitation is excellent.

2) The resident's files are extremely organized.

3) Vehicle searches are consistently being completed to control the introduction of contraband

I certify that this inspection has been performed in accordance with Bureau of Prisons policy and that all information is true and correct to the best of my knowledge.

Ray Toston
RAY TOSTON
Contract Oversight Specialist

Date: 02-02-00

Reviewed by:

HELEN RAMSDELL
Community Corrections Manager

Date: 2-2-00

BAN10841

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

February 24, 2000

Helen Ramsdell
Federal Bureau of Prisons
Community Corrections Office
2350 Fairlane Drive, Suite 110
P.O. Box 230727
Montgomery, Al 36123

Dear Ms. Ramsdell

This is in response to your letter of February 2, 2000 concerning the full monitoring at Bannum Place of Montgomery on January 5, 2000. Attached is a letter from Director Davis which represents Bannum's response however, I would like to comment as well.

Significant Finding:

In a supplemental letter of February 4, 2000 you state: "the contractor shall provide all residents seeking employment with free transportation." It is our understanding that the SOW only requires that we provide "free" transportation to "indigent residents"; it does not require that we provide free transportation to "all residents".

Finding #1

Bannum's proposed staffing, and that which was accepted by BOP for the current contract period provides for three full-time positions; a Director, Counselor and Employment Specialist. Since inception of the contract, Juliette Davis has been the full- time Director, Jennifer Means has been the full- time Counselor and Jackie Bell has been the full- time Employment Specialist. You refer to Ms. Bell as the "Executive Assistant to the Director" however, Bannum Place of Montgomery has no such position under this contract. Ms. Bell's full time position under the

previous contract was titled, "Executive Assistant to the Director" however, effective as of the new contract period, her titled was changed to "Employment Specialist". As you can see, our program has provided three full time persons occupying three full time positions since inception of the contract. Therefore, we are in compliance with the contract staffing. Even though there may have been some confusion concerning the position title, given the above discussion, we request that this finding be withdrawn. Also consider that our program participants have obtained employment within SOW guidelines since inception of the contract.

Finding #2

In your letter you stated that " an agreement with Bannum and the Contracting Officer was reached on November 26, 1999.......". Attached is the documentation which shows that an agreement has not been reached. Therefore, we request that this finding be withdrawn.

Please let me know if I can be of any further assistance.

Sincerely,

David A. Lowry

**BANNUM PLACE OF MONTGOMERY**
**540 Sayre Street**
**Montgomery, Alabama 36104**
**(334) 262-0227**

**Juliette Davis**
**Director**

February 23, 2000

Bill Hunt, Operations Director
5904 MacCorkle Ave., S.W.
St. Albans, WV 25177

Dear Mr. Hunt:

In response to the monitoring report dated January 3rd, 4th and 5th 2000. The following corrections and/or modifications have been made.

**Significant Finding # 1:**

All indigent residents will be provided bus passes.

**Finding # 1: Personnel**

Ms. Bell has been assigned as the Employment Specialist. This change has actually been in effect since October 1999. Due to clerical error however, the documentation was not completed.

**Finding # 2: Facility**

In negotiations.

**Finding # 3: Life Safety**

1. The ground fault circuit interupter on the electrical outlet in the small upstairs bathroom has been repaired and is now working properly.
2. The extension cord in the female dormitory has been removed.
3. The openings/gaps around an electrical outlet in the monitor's office has been repaired.
4. The wash basin that was not stabilized has been placed into a vanity so it will remain stable.
5. The disable shower located on the first floor has been repaired so water will not leak to the basement.

**Finding # 4: Electrical Safety**

All electrical floor heaters have been discontinued.

**Finding # 5: Services**

The menu attached is approved by a registered dietitian and meets the kcal/per day for males and females. (copy attached)

**Finding # 6: Services**

New agreements with Baptist Health Center has been finalized. (copy attached)

**Recommendation # 1**

Dates are being placed on containers/or sacks upon delivery of food.

**Recommendation # 2**

Counselors will work one (1) weekend day per month and holidays.

**Recommendation # 3**

All staff members will knock before entering residents' rooms.

**Recommendation # 4**

We are exploring ways to address this concern

**Recommendation # 5**

A microwave has been purchased for upstairs use by females.

If you have any questions or need assistance, please call me.

Sincerely,

JULIETTE DAVIS, DIRECTOR
BANNUM PLACE OF MONTGOMERY

**U.S. Department of Justice**

Federal Bureau of Prisons

*COMMUNITY CORRECTIONS OFFICE*

*2350 Fairlane Drive, Suite 110*
*P.O. Box 230727*
*Montgomery, AL 36123-0727*

March 2, 2000

David Lowry
Executive Director
Bannum Incorporated
1301 Seminole Boulevard
Large, Florida 33770

**RE: Clarification**
**Full Monitoring (4XA)**
**January 3-5, 2000**
**Contract Number J200c-397**

Dear Mr. Lowry:

The purpose of this correspondence is to respond to your letter dated February 24, 2000 regarding your response to the above referenced monitoring, and to request clarification to your response to the following findings.

We are in receipt of your response to our Full Monitoring Report dated February 2, 2000. However, clarification is needed in response to the Significant Finding of your letter dated February 24, 2000, Finding #1 of your letter dated February 24, 2000 as well as Ms. Davis's response to this issue of her letter dated February 23, 2000, and Finding #2 of your letter dated February 24, 2000, as well as Ms. Davis' response to this issue of her letter dated February 23, 2000.

**Significant Finding:**

This finding resulted from the contractor's noncompliance with the Statement of Work by not providing **indigent** residents with **free** transportation while seeking employment. In your letter dated February 24, 2000, you did not say whether or not you will be providing all indigent residents with free transportation while seeking employment.

**Finding #1:**

This finding resulted from the contractor's noncompliance with the Statement of Work by not ensuring the Employment Specialist **focus primarily** on employment aspect of CCC programing, i.e., developing employment resources as well as conducting employment readiness counseling with residents and follow-up monitorings.

BAN10307

In your letter dated February 24, 2000 as well as Ms. Davis' response to this issue, you fail to provide assurance that Bannum plans to comply with the Statement of Work.

**Finding #2:**

This finding resulted from the contractor's noncompliance with the Statement of Work by not providing transportation to residents for employment or program participation activities at no cost to the resident, due to the facility not being located within one mile of public transportation. In our monitoring report dated February 2, 2000, we requested that you comply with the recent negotiated agreement between you and the Contracting Officer. In your response dated February 24, 2000, as well as Ms. Davis's response to this issue, Bannum failed to provide assurance that transportation will be provided in accordance with the Statement of Work and/or the recent negotiated agreement.

Please provide an acceptable response to the above referenced findings no later than 5 business days from receipt of this letter. Failure to provide acceptable responses to these issues could result in a financial penalty. If you have questions and/or concerns, do not hesitate to contact us.

Sincerely,

for Helen Ramsdell
Community Corrections Manager

cc: Cheryl Dennings, Community Corrections Administrator
Donna Zickefoose, Management Center Administrator
Anthony H. Bigesby, Contracting Officer
Juliette Davis, Program Director

**BANNUM, INC.**
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

March 7, 2000

Helen Ramsdell
U. S. Department of Justice
Federal Bureau of Prisons
Community Corrections Office
2350 Fairlane Drive, Suite 110
P. O. Box 230727
Montgomery, AL 361223-0727

Dear Ms. Ramsdell:

This letter concerns your request for clarification of Bannum's response of February 24, 2000 to the monitoring report dated February 2, 2000.

Significant finding:

> Bannum Place of Montgomery will provide transportation for indigent residents while seeking employment at no cost to the resident. Bus passes will be purchased from DART and given to unemployed indigent residents.

Finding #1:

> The Employment Specialist, along with the assistance of other staff, will provide services to residents as required in the SOW, Chapter 10, E, Employment 1. through 4.

Finding #2:

> It is my understanding that, in response to my request, the CCRA was to have this finding rescinded. Further, Bannum is currently negotiating a contract modification with Mr. Melvin Gardener, of the Contracting Branch. In fact, on March 2, 2000, Mr. Gardener

BAN10866

requested that Bannum provide additional information relating to the modification costs.

If I can be of any further assistance, please let me know.

Sincerely,

David A. Lowry

**U. S. Department of Justice**

Federal Bureau of Prisons

*Community Corrections Office*

*Post Office Box 230727*
*Montgomery, AL 36123-0727*

March 13, 2000

David Lowery
Executive Director
Bannum Incorporated
1301 Seminole Boulevard
Suite 126
Largo, Florida 33770

**RE: Close out of Full Monitoring conduced January 3-5, 2000 Contract Number J200c-397 (CMY 4XA)**

Dear Mr. Lowery:

The purpose of this correspondence is to close out the Full Monitoring conducted at your facility on the above referenced dates.

We are in receipt of your response to our clarification letter. Based on your responses, you may consider this monitoring officially closed. We appreciate all your efforts to provide quality services and programs to the residents.

We look forward to our next visit to your facility. Should you have any questions and/or concerns, please contact us.

Sincerely,

for Ray Jordan
Helen Ramsdell
Community Corrections Manager

cc: Cheryl Dennings, Community Corrections Administrator
Donna Zickefoose, Management Center Administrator
Anthony Bigesby, Contracting Officer
Juliette Davis, Director
Robert P. Longshore, Chief United States Probation Officer
Community Corrections Manager Contract File

BAN10868

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

March 24, 2000

Melvin Gardner
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Tupelo/Montgomery Transportation

Dear Mr. Gardner:

On January 7, 2000, Bannum submitted costs to the BOP associated with its proposal for the provision of transportation services in excess of contract terms for our Tupelo and Montgomery programs. The BOP then stated that those costs were excessive and requested that we lower those costs.

In our effort to accommodate the BOP, we have successfully negotiated transportation agreements (see attached) which lower the cost. Please note that the services provided are by independent taxis rather than the established public taxis company. Additionally, after discussions with the CCRA and Directors of the Tupelo and Montgomery programs, a further cost savings can be realized by providing five hours per day of service rather than six as initially proposed. Accordingly, the following revised costs are submitted for your review.

<u>Tupelo, MS.</u>

2300 Taxis Service of Tupelo, MS will provide transportation to certain residents between the hours of 5:00 a.m. and 7:30 a.m. and 3:30 p.m. and 6:00 p.m., on an as needed basis, Monday through Friday. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles, and will not be provided beyond the city limits.

Based on the $10.25 per hour rate for 5 hours per day, 5 days per week, 52 weeks per year, the total cost is $13,325. The umbrella insurance policy cost is $3,426 divided equally between the two programs provides a cost of $1,713. Administrative and overhead costs to include management, billing, collection,

accounts payable, check writing, taxes, clerical, telephone, copying, etc. is anticipated to equal or exceed $8,600 annually. In addition, a reasonable profit of approximately $2762 per year provides a total cost to the government of $26,400 annually.

Accordingly, transportation will be provided for transporting employed residents to and from their work site, residents seeking employment to specific interviews and for no other purpose. The cost of this service to the BOP is $2,200 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event 2300 Taxis Service discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event that Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Should a problem arise with the provider of services, Bannum will use its best efforts to resolve the problem, change providers or take other appropriate action which the BOP deems necessary. However, Bannum can not be held responsible for lapses in service, quality of service, or other matters beyond its control.

Montgomery, AL

New Deal Cab of Montgomery will provide transportation to certain residents between the hours of 6:30 a.m. and 8:00 a.m. and 5:30 p.m. and 9:00 p.m. on an as needed basis, Monday through Friday. This transportation service is intended to supplement the existing public transportation system, not replace it. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles or use of the existing public transportation system, and will not be provided beyond the city limits.

Based on the $27 per hour rate for 5 hours per day, 5 days per week, 52 weeks per year, the total cost is $35,100. The umbrella insurance policy cost is $3,426 divided equally between the two programs provides a cost of $1,713. Administrative and overhead costs to include management, billing, collection, accounts payable, check writing, taxes, clerical, telephone, copying, etc. is anticipated to equal or exceed $13,000 annually. In addition, a reasonable profit of approximately $5,387 per year provides a total cost to the government of $55,200 annually.

Accordingly, transportation will be provided for transporting employed residents to and from their work site, residents seeking employment to specific interviews and residents participating in Transitional Services Counseling and for no other purpose. The cost of this service to the BOP is $4,600 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon. We are requesting that payment for this service be made in advance and on a monthly basis.

In the event New Deal Cab Company discontinues its service to Bannum then Bannum reserves the right to discontinue this transportation service. However, in that event, Bannum will use its best efforts to locate other means of transportation service at the same cost. In the event that Bannum locates other transportation service but at a higher cost, then Bannum's cost to the BOP will increase accordingly.

Please let me know if I can be of any further assistance.

Sincerely,

David A. Lowry

**From:** Helen Ramsdell
**To:** Zickefoose, Donna
**Date:** 4/7/00 10:50am
**Subject:** CCC Transportation

As some inmates will eventually get there own vehicles or have family members to transport them during part of their CCC placement, it is doubtful that 100,000 miles would be put on a center vehicle in a year. Especially if Montgomery gets some sort of dependable public transportation up and running.

**From:** Melvin Gardner
**To:** BOPDOM7.BOPCCM(CAT0001)
**Subject:** Fwd: CCC Transportation -Reply

Donna:

I concur with Helen's memo that 100,000 miles per year, per facility may be excessive for transportation needs at the Montgomery and Tupelo facilities. This we can negotiate with Bannum. However, in order to negotiate with Bannum, I need a Statement of Work and realistic estimate of needs in-order to determine the best solution for the transportation problems noted above.

We also have to keep in mind that if we ask Bannum to provide a van for each of these facilities, Bannum is going to incur fixed costs for the van, driver, insurance, administration, etc., that we are going to have to pay regardless of how many miles we transport inmates. He is also going to charge us profit and overhead wether he is providing us with a van, taxicab, or any other method of transportation, if we request this service from them.

Another thing we also need to keep in mind is, if we ask Bannum to provide vans for this service, we should continue to contract for this service for the life of the contract. If public transportation means improve in these area, and we no longer need Bannum to provide this service, we may have to pay him to terminate this portion of the contract.

If you wish us to continue to pursue this option, please provide me with a Statement of Work and realistic government estimate of your transportation needs at these facilities. If we cannot obtain a reasonable rate and method from Bannum to meet your transportation requirements, we will promptly let you know.

Please let me know if I may be of further assistance.

U. S. Department of Justice

Federal Bureau of Prisons

*Community Corrections Office*

*Post Office Box 2[illegible]*
*Montgomery, AL [illegible]*

April 11, 2000

Melvin Gardner, Assistant Chief
Community Corrections Contacting
Federal Bureau of Prisons
Central Office
320 First Street, NW #5006
Washington, D.C. 20534

Dear Mr. Gardner:

The following is a Statement of Work to provide transportation to residents at Bannum Community Corrections Center in Tupelo, Mississippi, under Contract Number J200c-306.

Do not hesitate to contact me at (334) 223-7464 if you have questions and/or concerns.

Sincerely,

Helen Ramsdell
Community Corrections Manager

STATEMENT OF WORK

The contractor will provide transportation to all residents for employment purposes, and program participation activities at no cost to the residents. Once the resident(s) become employed, the resident(s) may elect to provide their own transportation, if approved and eligible to do so.

The following are examples of activities in which the contractor will provide transportation to residents:

1) Employment Interviews

2) Employment (To and from Work)

3) To Obtain Personal Identification

4) Mental/Medical/Dental Appointments

5) Substance Abuse Treatment

6) Any Program Participation Activities

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

May 10, 2000

Melvin Gardner
Bureau of Prisons
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Montgomery and Tupelo Transportation

Dear Mr. Gardner:

As I stated to you by telephone today, we are expeditiously re-constructing our previously submitted proposals for transportation services at the above locations. It is anticipated that a revised proposal which we believe will address all of the issues which the Regional BOP personnel have expressed will be forwarded to you within a couple of days.

As we previously discussed, legal counsel for the company believes that both we and the BOP may have significant exposures should perhaps six or eight inmates using this transportation service become victims of injury or death. The resultant publicity and legal entanglements would likely be onerous. Consequently, we are advised to provide such services through a separately incorporated entity entirely separate from Bannum, Inc. but owned by Bannum shareholders.

As you know, this matter has been dragging on for some time and we know that regional BOP personnel are anxious to conclude these negotiations; therefore, we are sending this matter forward for review and consideration so that its resolution can be included in our proposal. I will contact you by telephone within several days for discussion if necessary.

Sincerely,

David A. Lowry

2000 MAY 17 PM 2:42
RECEIVED
CONTRACTING
COMMUNITY CORRECTIONS

MAY-19-2000 16:01 MONTGOMERY CCM P.01/06

**U. S. Department of Justice**

Federal Bureau of Prisons

*Community Corrections Office*

*Post Office Box 230727*
*Montgomery, AL 36123-0727*

May 19, 2000

David Lowry
Executive Director
Bannum Incorporated
1301 Seminole Boulevard
Largo, Florida 33770

Jason

**RE: Interim Monitoring (CMY 4AX)**
**(May 2-3, 2000)**
**Montgomery, Alabama**
**Contract Number J200c-397**

Dear Mr. Lowry:

The purpose of this letter is to convey the findings of the Interim Monitoring conducted at your facility on the above referenced dates. All findings are included in the attached Monitoring Report.

The overall operation of your facility was found to be satisfactory. As noted in the report, there are some findings which will require corrective action. There is also a finding concerning a late release noted in the report that occurred after the monitoring. This finding requires a response. Additionally, please respond to all recommendations in the report.

Please thank your staff for the warm hospitality and cooperation displayed throughout the monitoring.

Please forward your response to this report to me no later than 30 days from receipt of this letter. If you have any questions and/or concerns regarding the monitoring, please feel free to contact me.

Sincerely,

Helen Ramsdell
Community Corrections Manager

cc: Cheryl Dennings, Community Corrections Administrator
Donna Zickefoose, Management Center Administrator
Crystal D. Clayton, Contracting Officer, Washington, D.C.
Robert P. Longshore, Chief United States Probation Officer
Juliette Davis, Program Director
Community Corrections Manager Contract File

BAN10949

**INTERIM MONITORING REPORT FOR**
**BANNUM INCORPORATED**
**BANNUM PLACE OF MONTGOMERY**
**540 SAYRE STREET**
**MONTGOMERY, ALABAMA 36104**
**CONTRACT NUMBER J200c-397**

## SCOPE OF THE INTERIM MONITORING

An Interim Monitoring of the facility was conducted May 2-3, 2000, to determine compliance with the terms of the contract between Bannum Incorporated and the Bureau of Prisons. The following are the specific dates and times of the monitoring: May 2, 2000, from 8:20 a.m. to 2:00 p.m. and May 3, 2000, from 7:15 a.m. to 2:50 p.m. The monitoring consisted of a random review of residents' files, facility logs, staff and resident interviews, as well as a walk through of the facility to identify any safety and/or sanitation concerns.

The previous Full Monitoring conducted January 3-5, 2000 identified the following findings: failure to provide free transportation to indigent residents; failure to assist residents in finding employment opportunities; failure to provide transportation to residents for employment and program participation activities; several life safety deficiencies; Using space heaters in the facility; food menu not specifying kcal per day for residents and no up-to-date written medical agreement. **All previous findings, with the exception of providing transportation to residents for program and employment participation activities, have been corrected.**

## BACKGROUND INFORMATION

Bannum Incorporated is the sole provider of community-based services in the Montgomery, Alabama area. The facility is a multistory building consisting of a basement and two stories, which was built in the late 19th century. There is an automatic sprinkler system connected to alert the local fire department of a fire. The facility is located in a residential area of the city near downtown.

The facility serves as a pre-release center for male and female offenders. Client types include institution transfers, direct court commitments, supervised release violators, probation cases and pre-trial cases. All offenders should be assisted in securing viable employment, made aware of available community services, assisted with the establishment of personal bank accounts, and the reestablishment of family and community ties.

The CCC contract was awarded to Bannum Incorporated on July 1, 1998. Performance of the contract begin on October 1, 1998. The quota is 26. CCC utilization over past 4 months has been 2417 regular inmate-days and 604 home confinement inmate-days. This equates to 20 residents per month in the facility with an additional 3 residents assigned to the home confinement program.

On the first and last day of the monitoring, there were 20 Bureau residents in the facility and 1 on home confinement. There were 0 Pretrial residents in the facility.

## REPEAT FINDINGS AND CORRECTIVE ACTION REQUIRED

There were no Repeat Findings noted during this monitoring.

## FINDINGS AND CORRECTIVE ACTION REQUIRED

**FINDING #1 - LIFE SAFETY**

The Statement of Work, Chapter 4, Page 19 & 20-A, Number 3, states *"The contractor will establish a comprehensive Environmental/ Pollution Prevention Program designed to use source reduction techniques and sound recycling practices in accordance with local ordinances. If there are no local ordinances in place, the contractor shall develop an Environmental Awareness Program available to all residents."*

The contractor has not established a comprehensive Environmental Pollution Prevention Program at the facility.

**Corrective Action:**

The contractor shall establish a recycling program in accordance with local ordinance. The program shall be designed to use source reduction techniques and sound recycling practices in accordance with local ordinances. If there are no local ordinances in place, the contractor shall develop a recycling program. The program should include recycling of the following items: aluminum cans, plastic, cardboard, newspaper, etc. This should be in place by June 1, 2000.

**FINDING #2 - RECORDS AND REPORTS**

Chapter 14, Page 71-G, states "The contractor shall maintain a chronological log for all residents tested under the urine testing program.

The log shall include specimen number, resident's name and number, date sample collected, staff member witnessing collection, reason for test, results and date received. These individual logs shall be placed in the resident's file.

Individual chronological urine logs maintained in resident's case files do not show the reason for test.

**Corrective Action:**

**By May 29, 2000**, the contractor shall revise the individual chronological logs to reflect the reason the test was given, i.e. after-care, history, random, and suspected use.

**FINDING #3 - RECORDS AND REPORTS**

The Statement of Work, chapter 15 Page 73-B states "Contractors shall verify the correctness of each resident's release date with the CCM prior to each resident's release. No release date of any federal prisoner shall be retarded, advanced or otherwise changed without approval of the CCM or USPC."

On May 15, 2000, the CCM office received notification from the contractor that inmate Bennie Betton, #10180-002 was released on Monday, May 15, 2000. Inmate Betton's actual release date was Sunday, May 14, 2000. Therefore, he should have been released on Friday, May 12, 2000.

**Corrective Action:**

Prior to a resident's release, the contractor shall verify the release date with CCM staff. This shall be completed in advance of the resident's scheduled release date. All paperwork (Notice of Release and Arrival information, Rosters sent to CCC staff, etc.) shall be reviewed to ensure the release date on the documents coincide. The contractor shall discuss any discrepancies with CCM staff prior to the resident's release date, **effective immediately.**

**RECOMMENDATIONS**

**RECOMMENDATION #1**

Install additional lighting in the Monitor's Office.

**RECOMMENDATION #2**

Repair or replace the torn carpet in the upstairs television room and staff reception area.

**RECOMMENDATION #3**
To enhance the appearance of the facility, paint the walls of basement.

**TRAINING**

During the monitoring process, training was given on the proper development of resident Program Plans and bi-weekly program plan reviews. Staff were receptive to the training.

**AREA OF CONCERN**

This issue is currently being negotiated by the contractor with Central Office Contracting. Therefore, it is not considered a finding but remains a concern.

Although the facility is located within one mile of public transportation, residents are often times without transportation, due to the inadequate and unreliable bus system. Resident interviews revealed they continue to walk to and from work during periods of inclement weather i.e, rain, sleet, cold and heat. During the monitoring, a 62 year old female was observed leaving the facility walking to Burger King, approximately four miles away. She stated she has walked to and from work for the past three months during times of inclement weather.

The public bus transportation system is inadequate and unreliable. Residents have to call and make an appointment to be picked up from the nearest designated pick-up location. Often times, the bus fails to pick them up. As a result, residents are late for work and other appointments.

The bus has a fixed route, but according to residents and staff, the bus often does not arrive on time. Additionally, the bus does not always travel to the vicinity of residents' job locations and appointments. Many medical, dental and other appointments are missed because of the unreliable bus system. An interview with a female resident revealed she missed several medical appointments because the bus passed her by on three separate occasions.

Furthermore, many residents have a difficult time returning to the facility after their participation in the BOP Drug Transitional Services Program. If the residents are fortunate enough to catch a bus to class, often times they have difficulties returning to the facility via the bus because the bus stops running at 7:00 p.m.

Residents have to return to the facility using any means possible. As a result, CCC staff are forced to extend their curfew.

Many residents are missing out on viable job opportunities due to transportation problems. There is a prison ministry program at a prominent church that offers employment to anyone who desires to work. This church is located approximately 15 miles from the CCC facility. Due to the transportation problems, residents are unable to participate in the program.

**COMMENDATIONS**

1) Staff are in the process of attempting to implement a program that gives employers a tax break for hiring ex-felons.

2) Mr. Coleman, Counselor, is acknowledged for his hard work and dedication in keeping up with the resident case load after the departure of a fellow counselor.

I certify that this inspection has been performed in accordance with Bureau of Prisons policy and that all information is true and correct to the best of my knowledge.

Ray Toston Date: 05-19-00

RAY TOSTON
Contract Oversight Specialist

Reviewed by:

Helen Ramsdell Date: 5-19-00

HELEN RAMSDELL
Community Corrections Manager

BANNUM, INC.
1301 SEMINOLE BOULEVARD
SUITE 126
LARGO, FLORIDA 33770

DAVID LOWRY
EXECUTIVE DIRECTOR

OFFICE: (727) 588-2594
FAX: (727) 588-2689

June 13, 2000

Melvin Gardner
Federal Bureau of Prisons
CCC Contracting
320 First Street N. W.
Washington, DC 20534

By Fax

Re: Tupelo/Montgomery Transportation

Dear Mr. Gardner:

As you are aware, Bannum has made several previous proposals to the BOP in an effort to accommodate its expressed requirements for transportation at our Tupelo and Montgomery programs. In fact, Bannum management personnel met with BOP Regional personnel on April 25, 2000 for discussion of this matter. As a result of that meeting and our understanding of the desires of the BOP Regional personnel, we offer the following proposal through Conveyance Consulting Services, L.L.C. (CCS), an independently incorporated entity wholly owned by Bannum shareholders. While this proposal exceeds the amounts of the previous proposals, such amounts resulted from expanded directives from the Regional personnel with whom we met.

Tupelo, MS

2300 Taxis Service of Tupelo, MS will provide transportation to residents between the hours of 5:30 a.m. and 10:00 a.m. and 4:00 p.m. and 6:00 p.m., on an as needed basis, Monday through Friday, in accordance with the attached agreement. Transportation is limited to those residents who have no other means of viable transportation, to include the use of personal vehicles, and will not be provided within one linear mile of the facility as is discussed in the SOW. In addition, 2300 Taxis Service will be on call to serve the transportation needs of our residents between the hours of 10:00 a.m. and 4:00 p.m. and 2300 Taxis Service has agreed to a minimum response time during those hours of 30 minutes. Further, in unusual situations, Bannum staff will transport residents by private vehicles, if necessary, as they currently do. In cases of medical emergencies, residents will be

transported by ambulance. Residents will be required to schedule known program activities and other necessities in advance and to accommodate the fixed or on-call transportation service hours and response time.

Based on the $10.25 per hour rate for 6.5 hours per day, 5 days per week, 52 weeks per year, the total cost is $17,420. CCS is projecting a fixed cost for two hours per day, 5 days per week for on-call service between the hours of 10:00 a.m. and 4:00 p.m at a cost of $5,330 per year. The umbrella insurance policy cost to CCS is $9,535 divided equally between the two programs provides a cost of $4,767. Administrative and overhead costs are anticipated to equal or exceed $8,600. As I remember, you previously indicated that the administrative overhead was excessive. Please consider that the proposed $8,600 annually amounts to only $717 per month for administrative and overhead costs to include management, oversight with the taxis' companies including drivers' information and records, vehicle maintenance records, periodic insurance verifications, coordination of insurance coverage between that of 2300 Taxis and CCS, verification of transportation schedules and costs thereof, billing, collection, accounts payable, check writing, taxes, clerical, telephone, copying, etc. In addition, a reasonable profit of approximately $4,000 per year provides a total cost to the government of $40,117 annually. The cost of this service to the BOP is $3,343 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon.

In the event 2300 Taxis Service discontinues its service to CCS then CCS reserves the right to discontinue this transportation service. However, in that event, CCS will use its best efforts to locate other means of transportation service at the same cost. In the event that CCS locates other transportation service but at a higher cost, then CCS's cost to the BOP will increase accordingly.

Should a problem arise with the provider of services, then CCS will use its best efforts to resolve the problem, change providers or take other appropriate action which the BOP deems necessary. However, Bannum cannot be held responsible for lapses in service, quality of service, or other matters beyond its control.

Montgomery, AL

New Deal Cab Company of Montgomery will provide transportation to residents between the hours of 6:30 a.m. and 10:00 a.m. and 4:00 p.m. and 9:00 p.m. on an as needed basis, Monday through Friday. Transportation will be limited to those residents who have no other means of viable transportation, to include the use of personal vehicles, and will not be provided within one linear mile of the facility as is discussed in the SOW. In addition, New Deal Cab Company will be on call to serve the transportation needs of our residents between the hours of 10:00 a.m. and 4:00 p.m. and New Deal Cab Company has agreed to a minimum

response time during those hours of 30 minutes. Further, Bannum staff will transport residents by private vehicles, if necessary, in unusual situations as they currently do. In cases of medical emergencies, residents will be transported by ambulance. Residents will be required to schedule known program activities and other necessities in advance and to accommodate the fixed or on-call transportation service hours and response times.

Based on the $27.00 per hour rate for 8.5 hours per day, 5 days per week, 52 weeks per year, the total cost is $59,670. CCS is projecting a fixed cost for two hours per day, 5 days per week for on-call service between the hours of 10:00 a.m. and 4:00 p.m at a cost of $14,040. The umbrella insurance policy cost to the CCS is $9,535 divided equally between the two programs provides a cost of $4,767. Administrative and overhead costs are anticipated to equal or exceed $13,000. As I remember, you previously indicated that the administrative overhead was excessive. Please consider that the proposed $13,000 annually amounts to only $1,083 per month for administrative and overhead costs to include management, oversight with the taxis' companies including drivers' information and records, vehicle maintenance records, periodic insurance verifications, coordination of insurance coverage between that of New Deal Cab Company and CCS, verification of transportation schedules and costs thereof, billing, collection, accounts payable, check writing, taxes, clerical, telephone, copying, etc. In addition, a reasonable profit of approximately $9,000 per year provides a total cost to the government of $100,477 annually. The cost of this service to the BOP is $8,373 per month which includes transportation, insurance, administrative costs and a reasonable profit thereon.

In the event New Deal Cab Company discontinues its service to CCS then Bannum reserves the right to discontinue this transportation service. However, in that event, CCS will use its best efforts to locate other means of transportation service at the same cost. In the event that CCS locates other transportation service but at a higher cost, then CCS's cost to the BOP will increase accordingly.

Should a problem arise with the provider of services, then Bannum will use its best efforts to resolve the problem, change providers or take other appropriate action which the BOP deems necessary. However, Bannum cannot be held responsible for lapses in service, quality of service, or other matters beyond its control.

Please let me know if I can be of any further assistance.

Sincerely,

David A. Lowry

BAN04802