# 15

PILIERO, MAZZA & PARGAMENT, PLLC
ATTORNEYS AT LAW

FARRAGUT SQUARE
888 17TH STREET, N.W., SUITE 1100
WASHINGTON, D.C. 20006

(202) 857-1000
FAX (202) 857-0200

writer's e-mail address:
jsummerill@pmplawfirm.com

DANIEL J. PILIERO II
(1942-1990)
PAMELA J. MAZZA
JEFFREY J. PARGAMENT
ANDREW P. HALLOWELL

ANTONIO R. FRANCO
PHILIP M. DEARBORN III
FRANK C. GULIN
STEPHEN C. DWYER
JUDITH M. BARGER
JOSEPH J. SUMMERILL, IV

NEW YORK OFFICE
292 MADISON AVENUE
NEW YORK, NY 10017

(212) 213-8200

February 27, 2001

**VIA FACSIMILE & U.S. MAIL**

Jackie Taylor
Acting, Management Center Administrator
Federal Bureau of Prisons
715 McDonough Blvd, S.E.
Atlanta, GA 30315

Re: Full Monitoring Report
Bannum Place of Montgomery
Contract Number J200c-397

Dear Mr. Taylor:

On behalf of Bannum, Inc. ("Bannum"), 1301 Seminole Boulevard, Suite 126, Largo, Florida 33770, telephone (727) 588-2594, facsimile (727) 588-2689, this constitutes an appeal to the February 21, 2001 Full Monitoring report conducted at Bannum Place of Montgomery. As indicated in Mr. Spencer's letter, since there were no findings identified in the report, no response is required and Bannum may consider the monitoring officially closed. While Bannum appreciates the several commendations issued by the Bureau of Prisons ("BOP") in the monitoring report, and Mr. Spencer's "congratulations for a job well done," Bannum feels compelled to appeal the Area of Concern addressed in the report.

The Full Monitoring Report on Bannum Place of Montgomery, states that "residents continue to suffer due to Bannum's failure to provide them with transportation for employment and program participation activities." See Full Monitoring Report, at 2. This statement is inaccurate, and Bannum requests that it be removed from the monitoring report. The BOP's repeated badgering of Bannum to provide the residents of Bannum Place of Montgomery with transportation is not only outside the scope of the contract, but may constitute "bad faith" administration of the contract.

Since February 1998, the BOP has repeatedly listed the decline of the public transportation system in Montgomery, AL as a "finding" or a "concern:"

PILIERO, MAZZA & PARGAMENT, PLLC

Jackie Taylor
February 27, 2001
Page 2

2/10/98 CCM Spencer (or the Montgomery BOP office) writes in a monitoring report:

> "Recommendation #3 - Transportation has become an issue since the change in the public transportation system within the City of Montgomery. The transportation needs of the residents need to be addressed by Bannum immediately, before the problem becomes severe."

3/18/98 Bannum's Operations Director responds

4/9/98 The Contracting Officer writes:

> "Bannum has not provided the BOP with an acceptable response. Bannum must present a corrective plan of action to the Contracting Officer by 2:00 PM on April 16, indicating how it will fully accommodate the transportation of federal residents, in accordance with the Statement of Work, Chapter 3, Section A.

4/16/98 Bannum's Executive Director responds to the Contracting Officer, Leah Wilson, in part:

> "Since we are in compliance with contract requirements, should the Government wish to amend the contract, Bannum will accommodate the additional requirements after the Government's approval of the necessary cost adjustment."

However, the failure of the Montgomery public transportation system is more a reflection of the BOP's failure to draft a RFP and contract terms which meet the needs of the government. I do not have to remind you, that it is the responsibility of the government to draft an RFP which describes the minimum needs of the procuring activity accurately. Hero, Inc., B-213225, December 14, 1983, 83-2 CPD ¶ 687 at 3.

In fact, Chapter 3 (A) of Contract Number J200c-397 specifically requires that:

> The facility shall be located within one mile of public transportation, or the contractor shall provide for transportation of residents for employment or program participation activities at no cost to the resident. (Emphasis Added)

In full compliance with the terms of this contract, Bannum Place of Montgomery is within one mile of public transportation. This fact is indisputable. Further, the BOP has not amended this portion of the contract:

3/10/98 Clarification and Discussion #1 - no mention of transportation issue

4/10/00 Clarification and Discussion #2 - The contracting officer states:

"14. Because the City of Montgomery has terminated much of its bus service, some residents are required to walk great distances to work under the current contract (J200c-181). This makes job searches and job-commuting an issue to be addressed under this Solicitation RFP 200-0422-SE. It is the contractor's responsibility to provide the residents with free transportation for employment or program participation activities when there is an absence of public transportation within one mile of the facility. Bannum must provide a plan of action addressing how the residents will be provided free transportation for the purposes stated above. SOW, Chapter 3, Section A. This is a weakness."

4/24/98 Bannum responds:

> "14. See attached letter of April 16, 1998. Should a different transportation plan be required, Bannum's Monday rates would increase based on the related costs thereof."

5/6/98 Addendum to Clarification and Discussion #2 - No mention of transportation issue.

5/27/98 Clarification and Discussion #3 - no mention of transportation issue

6/3/98 Request for Final Proposal Revision - no mention of transportation issue

6/17/98 Negotiations reopened - no mention of transportation issue

6/19/98 Negotiations reopened - no mention of transportation issue

6/25/98 Request for Final Proposal Revision - no mention of transportation issue

7/01/98 Notification of contract award - Obviously the transportation issue was negotiated to the satisfaction of the Contracting Officer, the evaluation committee and all other BOP officials involved in the procurement process.

10/1/98 New contract begins #J200c-397

2/1/99 CCM Spencer issues a finding in a monitoring report:

"Finding #2 - Facility (Transportation)

The City of Montgomery's public transportation system, Demand and Response Transit (DART) had proven to be an unreliable and ineffective means of transportation for the residents at the center."

2/16/99 Bannum's Operations Director responds

3/12/99 CCM Spencer states in a letter:

"However, there is strong evidence that the situation with the local bus service is not in accordance with the provisions of the Statement of Work."

3/26/99 Bannum's Executive Director responds:

" On March 24, 1999, I telephoned Ms. Perry, CCCOS (of the Montgomery office), and discussed the matter of bus service. Ms. Perry suggested I discuss the matter with the Contracting Officer, Leah Wilson. On March 25, 1999, I discussed the matter with Ms. Wilson and she said she would review the matter."

6/15/99 BOP Regional Transitional Drug Abuse Treatment Manager states in a letter:

"Upon conferring with the Management Center Administrator, Donna Zickefoose, the issue of transportation falls upon your agency based on the Statement of Work in which your agency agreed to provide transportation for the residents."

6/16/99 CCM Spencer issues a repeat finding in a monitoring report:

"Finding #2 - Facility - REPEAT FINDING

The City of Montgomery's public transportation system, Demand and Response Transit (DART) had proven to be an unreliable and ineffective means of transportation for the residents at the center (see attached news article)."

6/21/99 Bannum's Operations Director responds in a part to Regional Transitional Drug Abuse Manager's letter:
"Bannum is compliance with the Statement of Work due to public transportation being within one mile of the facility for the purpose of employment or program participation."

6/21/99 Bannum's Operations Director responds to the 6/16/99 repeat finding and appeals its issuance.

6/25/99 MCA Zickafoose states in a monitoring report:

> "The only deficiency from the last monitoring not resolved was the transportation issue. This is currently being discussed with the Central Office Contracting Officer and the Contractor."

6/28/99 MCA Zickafoose states in a letter:

> "Although the transportation issue has not been resolved, the problems regarding resident transportation are currently being discussed by the Contractor, Montgomery CCM Office, and the Central Office Contracting Office.
>
> As a resolution is expected in the near future, I accept Ms. Bellew's response to the findings. Please consider the March 1999 monitoring closed. If the transportation issue is not resolved it will be readdressed in the future."

Prior to 9/8/99 - CCRA Dennings requests that Bannum submit to her proposal for the provision of transportation services in excess of contract terms.

9/8/00 Bannum submits a drafts cost proposal to the CCRA which discusses price, terms and other conditions.

9/23/99 CCM Spencer states in a letter:

> "After numerous discussions regarding the transportation issue, we have decided to have the Contracting Officer negotiate this concern with your. For this reason, you may consider this monitoring officially closed. We appreciate all your efforts to provide quality services and programs to the residents."

11/24/99 Contracting Officer sends Modification #3 for transportation services to Bannum for signature. Bannum signs modification believing that its draft proposal submitted to the CCRA on September 8, 1999 had been accepted.

11/29/99 The CCRA informs Bannum that its draft proposal was not forwarded to Contracting Officer; therefore, Bannum rescinds its agreement to Modification #3.

12/17/99 Bannum receives Modification #3 signed by the Contracting Officer

PILIERO, MAZZA & PARGAMENT, PLLC



12/20/99 Bannum writes and reminds the Contracting Officer that it rescinded its agreement to Modification #3.

1/4/00 The Supervising Contracting Officer acknowledges the recission of Modification #3 and requests a cost proposal for the provision of transportation services in excess of contract requirements. Additionally, the Supervising Contracting Office states that the BOP Montgomery office may decide to not exercise the option period (THREAT) if Bannum does not satisfy their transportation concerns.

1/7/00 Bannum submit a formal cost proposal.

1/11/00 At the request of CCCOS Toston (new personnel in the Montgomery BOP office) Bannum's Executive Director responds to his concern about transportation as follows:

"Please be advised that Bannum, Inc. Is currently negotiating with the contracting office for the provision of transportation services at our program I Tupelo, MS and Montgomery, AL."

2/2/00 CCM Ramsdell (new personnel in the Montgomery BOP office) issues a finding in a monitoring report:

"The facility is not located withing one mile of public transportation."

2/23/00 Bannum's Executive Director responds:

Finding #2

In your letter you stated that an agreement with Bannum and the Contracting Officer was reached on November 26,1999.....
"Attached is the documentation which shows that an agreement has not been reached. Therefore, we request that this finding be withdrawn."

3/2/00 CCM Ramsdell states in a letter:

"This finding resulted from the contractor's noncompliance with the Statement of Work by not providing transportation to residents for employment of program participation activities at no cost to the resident, due to the facility not being located within one mile of public transportation. In our monitoring report dated

February 2, 2000, we requested that you comply with the recent negotiated agreement between you and the Contracting Officer."

3/7/00 Bannum's Executive Director writes:

"It is my understanding that, in response to my request, the CCRA was to have this finding rescinded. Further, Bannum is currently negotiating contract modification with Mr. Melvin Gardener, of the Contracting Branch. In fact, Mr. Gardener requested that Bannum provide additional information relating to the modification costs."

3/13/00 CCM Ramsdell writes in a letter:

"We are in receipt of your response to our clarification letter. Based on your responses, you may consider this monitoring officially closed."

3/24/00 In response to a request from the Contracting Officer to lower Bannum's cost, Bannum submits a second cost proposal.

4/25/00 Bannum management personnel meet in Atlanta with BOP Regional personnel to discuss the transportation issue, among other things.

6/13/00 Bannum submits a third cost proposal to the Supervising Contracting Officer.

10/5/00 In the absence of any discussion concerning Bannum's third cost proposal, the BOP notifies Bannum of its intent not to exercise the remaining option periods.

Therefore, it is difficult to understand why the February 21, 2001 Full Monitoring Report still addresses the BOP's concern with the area of transportation. No where in the report does the BOP acknowledge that Bannum is not in compliance with the terms of Contract Number J200c-397 -- I suspect because you know that Bannum is, in fact, in full compliance with the contract terms above. Therefore, it is both unreasonable and arbitrary for the BOP to continuously list the area of transportation as an area of concern.

The U.S. Court of Federal Claims has repeatedly overturned such determinations where the government has so blatantly been arbitrary, capricious, demonstrated an abuse of discretion, not in accordance with law, not in compliance with procedural requirements, or unsupported by substantial evidence. Aeron Marine Shipping Co. v. U.S., 26 Cl.Ct. 946 (1992); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823 (1971); Marathon Oil

PILIERO, MAZZA & PARGAMENT, PLLC

Jackie Taylor
February 27, 2001
Page 8

Co. v. United States, 17 Cl.Ct. 116, 120 (1989); Parks v. United States, 15 Cl.Ct. 183, 189 (1988); see 5 U.S.C. §§ 706(2).

I am also concern that the repeated use of the transportation issue in evaluating Bannum's performance, may rise to the level of "bad faith" administration of the contract. I do not need to remind you that specific acts of bad faith on the part of such officials can be imputed against the agency. Libertatia Associates, Inc. v. U.S., 46 Fed.Cl. 702 (May 23, 2000). In the case of Bannum Place of Montgomery, if it is proven that the aggregate of the actions of the government officials "would, if all done by one individual, fall below the standard of good faith, the entity for whom the various agents acted should be held to have violated that standard." Id.

At this point, Bannum is appealing the February 21, 2001 Full Monitoring Report, and requests that the report be amended to exclude the Area of Concern regarding transportation. Kindly direct all communications concerning this issue to the undersigned. If you have any questions, as always, please do not hesitate to contact me at (202) 857-1000.

Sincerely,

Joseph J. Summerill IV

cc: David Lowry
Jim Ropelewski, Esq.
Crystal D. Clayton, Contracting Officer